## EVANS v. UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 922. Argued April 17, 18, 1894.— Decided May 14, 1894.

An indictment should charge the crime, alleged to have been committed, with precision and certainty, and every ingredient of which it is composed must be accurately and clearly alleged; but it is not necessary in framing it to set up an impracticable standard of particularity, whereby the government may be entrapped into making allegations which it would be impossible to prove.

Applying this rule, the eighth count in the indictment, charging the prisoner with unlawfully procuring the surrender and delivery to himself of the funds of a national bank of which he was a director, and the fourteenth count, charging him with knowingly and fraudulently aiding in procuring the discount of unsecured paper by the bank, are examined in detail, and are held to be sufficient to sustain the conviction.

A verdict of guilty, entered upon all the counts of an indictment, should stand if any one of them is good.

PLAINTIFF in error, who was a director in the Spring Garden National Bank, was indicted for an alleged violation of Revised Statutes, § 5209, which reads as follows: "Every president, director, cashier, teller, clerk, or agent of any association, who embezzles, abstracts, or wilfully misapplies any of the moneys, funds, or credits of the association; . . . with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, . . . and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

The indictment contained 146 counts, upon all of which, except 24, a *nolle pros.* was entered. A demurrer was filed to all these remaining counts, which was overruled. The defendant was then arraigned, pleaded not guilty, was put upon trial, and convicted upon all the 24 counts, and sentenced

to five years' imprisonment. A motion for a new trial and in arrest of judgment being overruled, defendant sued out this writ, assigning as error the action of the court in overruling his demurrer, and in refusing to arrest the judgment on account of the insufficiency of the indictment. The case was originally argued in this court upon the sufficiency of all these counts, and a reargument subsequently ordered upon the eighth, ninth, tenth, and fourteenth.

. A copy of the eighth count, which was a representative one of its class, and in its framework and structure was similar to all the counts to which the attention of the court was called, is here given:

" 8. And the grand inquest aforesaid, inquiring as aforesaid, upon their respective oaths and affirmations aforesaid, do further present that heretofore, to wit, on the eighth day of May, A.D. 1891, the said Nelson F. Evans, yeoman, late of the district aforesaid, at the district aforesaid and within the jurisdiction of this court, did knowingly, wilfully, unlawfully, and fraudulently aid and abet one Harry H. Kennedy, (the said Harry H. Kennedy being then and there cashier of a certain national banking association then and there known and designated as the Spring Garden National Bank, in the State of Pennsylvania, which said association had been theretofore created and organized under and by virtue of acts of Congress in such case made and provided, and which said association was then and there acting and carrying on a banking business at Philadelphia, in the said district, under the acts of Congress in such case made and provided,) then and there to wilfully misapply a certain large amount of the moneys, funds, and credits then and there belonging to the said national banking association for the use, benefit, and advantage of the said Nelson F. Evans, then and there with intent in him, the said Nelson F. Evans, to injure and defraud the said national banking association — that is to say, the said Harry H. Kennedy, late of the district aforesaid, heretofore, to wit, on the day and year aforesaid, in the district aforesaid, and within the jurisdiction of this court, being then and there cashier, as aforesaid, of the said national banking association

aforesaid, did knowingly, unlawfully, fraudulently, and wilfully and with intent to injure and defraud ·the said national banking association misapply certain' of the moneys, funds, and credits of the said national banking association, to wit, the sum of seventy-five hundred dollars, in the manner and by the means following — that is to say, a certain promissory note, dated, to wit, Philadelphia, November 10, 1890, made and drawn by a certain person, to wit, A. B. Nettleton, for the sum of, to wit, seventy-five hundred dollars, due and payable March 13, 1891, at the said bank, had been theretofore, to wit, upon the day and year aforesaid, discounted by the said bank, and was then and there overdue and unpaid, and held by the said bank as and for funds and credits, as aforesaid; whereupon, the said Harry H. Kennedy did then and there, with intent to injure and defraud the said national banking association, knowingly, unlawfully, and fraudulently wilfully misapply the same, in that he then and there surrendered and delivered the same to the said Nelson F. Evans, without receiving therefor for the said bank the said sum of seventy-five hundred dollars, or any part thereof ; and the said Nelson F. Evans did then and there knowingly and unlawfully aid and abet the said Harry H. Kennedy, then and there cashier as aforesaid, knowingly, unlawfully, and fraudulently, to wilfully misapply the said funds and credits of the said national banking association, as aforesaid, then and there, with intent in him, the said Nelson F. Evans, to injure and defraud the said national banking association, contrary to the form of the act of Congress in such case made and provided, and against the peace and dignity of the United States of America."

*Mr. Hampton L. Carson*, (with whom were *Mr. J. Levering Jones* and *Mr. Rufus E. Shapley* on the brief,) for plaintiff in error.

*Mr. Assistant Attorney General Conrad* for defendants in error.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

This case involves the sufficiency of an indictment for the wilful misapplication of the funds of a national bank, in violation of section 5209 of the Revised Statutes.

A rule of criminal pleading, which at one time obtained in some of the circuits, and perhaps received a qualified sanction from this court in *United States* v. *Mills*, 7 Pet. 138, that an indictment for a statutory misdemeanor is sufficient, if the offence be charged in the words of the statute, must, under more recent decisions, be limited to cases where the words of the statute themselves, as was said by this court in *United States* v. *Carll*, 105 U. S. 611, 612, "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." The crime must be charged with precision and certainty, and every ingredient of which it is composed must be accurately and clearly alleged. *United States* v. *Cook*, 17 Wall. 168, 174; *United States* v. *Cruikshank*, 92 U. S. 542, 558. "The fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent." *United States* v. *Carll*, 105 U. S. 611.

Even in the cases of misdemeanors, the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offence intended to be charged, not only that the former may know what he is called upon to meet, but that, upon a plea of former acquittal or conviction, the record may show with accuracy the exact offence to which the plea relates. *United States* v. *Simmons.* 96 U. S. 360; *United States* v. *Hess*, 124 U. S. 483; *Pettibone* v. *United States* 148 U. S. 197; *In re Greene*, 52 Fed. Rep. 104.

The section in question in this case was before this court in *United States* v. *Britton*, 107 U. S. 655, 669, in which the wilful misapplication made an offence by this statute was defined to be "a misapplication for the use, benefit, or gain of the party charged or of some company or person other than the association," and that to constitute such an offence there must

be a conversion to the use of the offender, or of some one else, of the moneys or funds of the association by the party charged. It was said that a count which merely charged a maladminis- tration of the affairs of the bank rather than a criminal misappli- cation of its funds was insufficient. "It would not," said Mr. Justice Woods, "be sufficient simply to aver that the defendant 'wilfully misapplied' the funds of the association. . . . There must be averments to show how the application was made, and that it was an unlawful one." The case again came before this court in 108 U. S. 199, and it was then held that the de- claring of a dividend by the association when there were no net profits to pay it was not a criminal application of its funds, but an act of maladministration which, while it might subject the association to a forfeiture of its charter, and the directors to a personal liability for damages, did not render them liable to a criminal prosecution. Again, in *United States* v. *Northway*, 120 U. S. 327, it was held not to be necessary to charge that the moneys and funds alleged to have been misapplied had been previously entrusted to the defendant, since a wilful and criminal misapplication of such funds might be made by its officer or agent without having previously received them into his manual possession. See also *Claassen* v. *United States*, 142 U. S. 140.

The counts of this indictment may be divided into three general classes: First, those charging the defendant with pro- curing the surrender and delivery to himself of the funds of the bank, and which for convenience may be termed the "surrender and delivery" counts; second, those based upon the illegal discount of unsecured paper, and which may be termed the "unlawful discount" counts; and, third, those in which the defendant is accused of fraudulently overdrawing his own account at the bank, and which may be termed the "overdraft" counts.

1. The eighth, one of the "surrender and delivery" counts, charges in substance that on May 8, 1891, Evans did know- ingly, wilfully, unlawfully, and fraudulently aid and abet one Harry H. Kennedy, cashier of the bank, to wilfully misapply certain moneys, funds, and credits belonging to the bank, for

the use, benefit, and advantage of the said Evans, with intent in him, the said Evans, to injure and defraud the bank: That is to say, that the said cashier did knowingly, unlawfully, fraudulently, and wilfully, and with intent to injure and defraud the bank, misapply the sum of $7500, to wit, a promissory note dated November 10, 1890, made and drawn by A. B. Nettleton for this amount, due March 13, 1891, which had been theretofore discounted by the bank, was then overdue and unpaid, and was held by the bank as and for funds and credits, as aforesaid: Whereupon, the said cashier, with intent to injure and defraud the bank, did wilfully, knowingly, and fraudulently misapply the same by surrendering and delivering the note to Evans, without receiving payment therefor for the bank, and the said Evans did there knowingly and unlawfully aid and abet the said cashier in such wilful misapplication with intent in him, said Evans, to injure and defraud the bank.

The ninth and tenth counts did not differ from the eighth, except in describing other notes made by Nettleton, of different dates and amounts.

The same objection was taken to all of them, viz., that there was no averment that the defendant did not receive such notes as an agent for collection, or to secure their renewal, and subsequently failed to account for the same to the bank for proceeds or renewals; and, further, that there was no averment that the bank did not, either at the time of the surrender, or at any subsequent time, receive security, value, or renewal notes therefor, and no averment that the bank had been in any manner a loser thereby.

In answer to the first objection, that there was no averment that the defendant did not receive the notes as an agent for collection or to secure their renewal, it is sufficient to say that the count charges defendant with wilfully misappropriating the money and credits of the bank for his own use, benefit, and advantage, and with intent to defraud the bank, and that the object of the subsequent language of the count is rather to identify the property misapplied than to charge a distinct offence, although the allegation of a wilful misappropriation,

with intent to defraud, is repeated. The count charges, as ingredients of the crime, *first*, that the defendant knowingly, wilfully, unlawfully, and fraudulently aided and abetted the cashier; *second*, in wilfully misappropriating the funds and credits of the bank; *third*, that he did this for his own use and benefit; *fourth*, with intent to defraud the bank; *fifth*, the credit misapplied is then described as a note of one Nettleton, which was then overdue and unpaid; *sixth*, the manner of the misapplication is then set forth as consisting in the surrender and delivery of the same to the defendant, without receiving any part of the sum represented by the note.

Every element of the offence being set forth in the earlier part of the count, there was no necessity of repeating it when the particular credit misapplied is described, nor of negativing every possible theory consistent with an innocent delivery of the note to the defendant. This requirement would have the effect of limiting the government to allegations it might be wholly unable to prove, and without subserving any useful purpose to the defendant. While the rules of criminal pleading require that the accused shall be fully apprised of the charge made against him, it should, after all, be borne in mind that the object of criminal proceedings is to convict the guilty, as well as to shield the innocent, and no impracticable standards of particularity should be set up, whereby the government may be entrapped into making allegations which it would be impossible to prove. The note might have been delivered to the defendant for a score of honest purposes, which it would be utterly impossible to anticipate. Neither in criminal nor in civil pleading is it required to anticipate or negative a defence. "Where there is no question of variance . . . the indictment need not, by way of negative, introduce matter of defence when it is drawn on a statute any more than when it is at common law." 1 Bish. Crim. Pro. § 638. "In general," says Chitty, "all matters of defence must come from the defendant, and need not be anticipated or stated by prosecutor." 1 Chitty Crim. Law, 231; see also *United States* v. *Cook*, 17 Wall. 173. The general words of a fraudulent misapplication to the use and benefit of the defendant, and of an

intent by so doing to defraud the bank, are of themselves inconsistent with an honest purpose. Indeed, the word "surrender" carries with it something more than a bare delivery, and indicates a transfer of title as well as of possession.

It was equally unnecessary to charge that the bank did not, either at the time of surrendering, or at any subsequent time, receive security, value, or renewals for the notes surrendered, or that it had been the loser by such surrender, since there was an allegation that the surrender was made without receiving therefor, for the bank, the sum represented by the notes, or any part thereof. If it did receive such value thereafter it was clearly a matter of defence. The misdemeanor was complete when the note was fraudulently misapplied to the use of the defendant, with intent to defraud the bank, and, if the bank subsequently saved itself from loss, it was a matter to be proven by the accused, if, indeed, it were any defence at all. If, at the time of the surrender, the bank received security, value, or renewals, as a part of the same transaction, this would undoubtedly be a defence; but if the accused subsequently repented and indemnified the bank, or the latter was able to protect itself from loss, it is very doubtful whether this would inure to the benefit of the defendant, or purge him of the charge. 2 Bish. Crim. Law, § 796; *Regina* v. *Phetheon*, 9 C. & P. 552; *Regina* v. *Peters*, 1 C. & K. 245; *State* v. *Scott*, 64 N. C. 586; Wharton's Am. Crim. Law, § 1797.

2. The fourteenth count, which may be treated as a representative of all the "unlawful discount" counts, charged in substance that Evans knowingly, wilfully, unlawfully, and fraudulently aided and abetted the cashier to wilfully misapply the money, funds, and credits of the bank, for the use, benefit, and advantage of the defendant, with the intent on defendant's part to injure and defraud the bank, in that the said cashier knowingly, unlawfully, fraudulently, and wilfully, with the intent to defraud the bank, and for the use, etc., of the said Evans, misapplied the sum of $15,000 by receiving and discounting, with the money and funds of the bank, a note made by Evans for this amount, (giving copy,) which note, when so discounted, "was not then and there well secured," as the

cashier and Evans both well knew, and which note was never paid, by reason of which the bank suffered loss in this amount, with intent, in the said Evans, to injure and defraud the bank.

While the mere discount of an unsecured note, even if the maker and the officer making the discount knew it was not secured, would not necessarily be a crime, if the maker believed that he would be able to provide for it at maturity ; yet if his original intent was to procure the note to be discounted in order to defraud the bank, as charged in this count, every element of criminality is present. The case is not unlike that of purchasing goods or obtaining credit. If a person buy goods on credit in good faith, knowing that he is unable to pay for them at the time, but believing that he will be able to pay for them at the maturity of the bill, he is guilty of no offence even if he be disappointed in making such payment. But if he purchases them, knowing that he will not be able to pay for them, and with an intent to cheat the vendor, this is a plain fraud, and made punishable as such by statutes in many of the States. In this particular of an intent to defraud, the case is distinguishable from that of *United States* v. *Britton,* 108 U. S. 193, in which the charge was that the defendant, being president and director of the association, and, being insolvent, procured his own note to be discounted, the same not being well secured, the payee and the endorser thereof being also insolvent, which he, defendant, well knew. The incriminating facts were that the note was not well secured, and that both the maker and endorser were, to the knowledge of the defendant, insolvent when the note was discounted. The question there presented was whether the procuring of the discount of such a note by an officer of the association was a wilful misapplication of its moneys within the meaning of the law. It was held that it was not. The criminality really depends upon the question whether there was, at the time of the discount, a deliberate purpose on the part of the defendant to defraud the bank of the amount.

It is objected, however, to this count that there was no averment that the cashier, in discounting the note, acted in excess of his powers or outside of his regular duties, nor was there

any averment that the cashier was, not the duly authorized officer of the bank to discount paper, nor was there any averment that the discount was procured by any fraudulent means, or that Evans was at the time of such discount insolvent, or knew himself to be so. It was held by this court in *Bank of the United States* v. *Dunn*, 6 Pet. 51, that the power to discount paper was not one of the implied powers of the cashier, and this is believed to be the law at the present day. Morse on Banking, § 117. If the directors of this bank had authorized their cashier, either generally or in this particular case, to discount paper, it was clearly matter of defence. But even if he did possess such power, and wilfully abused it by discounting notes which he knew to be worthless, and did this with deliberate intent to defraud the bank, it is not perceived that his criminality is any less than it would have been if he had acted beyond the scope of his authority.

No averment was necessary that such discount was procured by fraudulent means, since the offence consists not in the use of fraudulent means, but in the discount of a note which both parties knew to be unsecured, with the intent thereby to defraud the bank. An averment that Evans was at the time insolvent, or knew himself to be so, was also unnecessary, in view of the allegation that Evans knew that the note was not secured, and procured the same to be discounted with intent to defraud the bank. The argument of the defendant in this connection assumes that under no circumstances is the discount of a note, which all parties know to be worthless, an offence under the statute, even though such discount be made for the deliberate purpose of defrauding the bank out of the proceeds of the note so discounted. We do not see how it is possible to give such an interpretation to the statute without a practical nullification of its provisions.

Defendant's entire criticism upon these counts seems to be founded upon the hypothesis that no weight whatever is to be given the words " knowingly, wilfully, unlawfully, and fraudulently," or to the general allegation of an intent to defraud — in short, that these words are mere surplusage. Where, however, the statute uses words which are not abso-

lutely inconsistent with an honest purpose, such as was held by this court in *Britton's case* were the words "wilfully misapplied," the allegation of an intent to defraud becomes material in the highest degree. In fact, the gravamen of the offence consists in the evil design with which the misapplication is made, and a count which should omit the words "wilfully," etc., and "with intent to defraud," would be clearly bad. While it is entirely true that an allegation of fraud is insufficient, either in an indictment or in a bill in equity, without giving the particulars of the fraud, an intent to defraud is only to be gathered by the jury from all the facts and circumstances of the case. There is no greater need of setting out the evidence to prove such intent than there would be of averring in detail the evidence of a *scienter*, or of any other fact material to the offence. Where the intent is a material ingredient of the crime it is necessary to be averred; but it may always be averred in general terms, as in a case of assault with intent to kill. So in an indictment for murder, it is necessary to aver that the killing was done "wilfully, feloniously, and of malice aforethought;" but the evidence that it was so done, though necessary to be given, is not necessary to be set forth. This subject, however, was so fully considered by this court in *United States* v. *Simmons*, 96 U. S. 360, 364, that it is needless to dwell upon it more at length here. In that case the indictment averred that the defendant "did knowingly and unlawfully engage in and carry on the business of a distiller . . . with intent to defraud the United States of the tax on the spirits distilled by him." It was held not to be necessary to state the particular means by which the United States was to be defrauded of the tax. "The defendant," said the court, "is entitled to a formal and substantial statement of the grounds upon which he is questioned, but not to such strictness in averment as might defeat the ends of justice. The intent to defraud the United States is of the very essence of the offence; and its existence in connection with the business of distilling being distinctly charged, must be established by satisfactory evidence. Such intent may, however, be manifested by so many

acts upon the part of the accused, covering such a long period of time, as to render it difficult, if not wholly impracticable, to aver, with any degree of certainty, all the essential facts from which it may be fairly inferred." "The means of effecting the criminal intent," says Mr. Wharton, "or the circumstances evincive of the design with which the act was done, are considered to be matters of evidence to go to the jury to demonstrate the intent, and not necessary to be incorporated in an indictment." 1 Wharton's Criminal Law, § 292.

A general verdict of guilty was rendered upon all the counts of this indictment upon which a *nolle prosequi* was not entered, and as such verdict should stand if any one of the counts is good, it will not be necessary to consider them in any further detail. *Claassen* v. *United States,* 142 U. S. 140.

The judgment of the court below is, therefore,

*Affirmed.*

Mr. Justice Field dissenting.

I am unable to concur in the judgment of the court in these cases, or in the opinion upon which it is founded. The two cases arise out of the same state of facts, are similar in essential particulars, and were argued together.

The defendant below, Nelson F. Evans, the plaintiff in error here, was for some years previously to May, 1891, a director of the Spring Garden National Bank, a national banking association doing business by that name at Philadelphia in the State of Pennsylvania. The bank failed on the 9th of May, 1891, and passed into the hands of a receiver. A year afterwards, in May, 1892, the defendant Evans was indicted for various acts in alleged violation of section 5209 of the Revised Statutes of the United States, which is as follows:

"Sec. 5209. Every president, director, cashier, teller, clerk, or agent of any association who embezzles, abstracts, or wilfully misapplies any of the moneys, funds, or credits of the association; or who, without authority from the directors, issues or puts in circulation any of the notes of the association; or who, without such authority, issues or put forth any

certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment or decree; or who makes any false entry in any book, report, or statement of the association with intent, in either case, to injure or defraud the association, or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association; and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years, nor more than ten."

The indictments originally contained several hundred counts, charging over one hundred and fifty different offences, but as to a large number of the counts a *nolle prosequi* was entered. The number retained was still large, amounting to twenty-three in one indictment and fifty-seven in the other. To them demurrers were filed and overruled. The defendant was then arraigned and pleaded not guilty, and, upon the issues, a jury was called and trials had, which resulted in conviction in both cases. A motion for a new trial in each case was overruled. Subsequently a motion in arrest of judgment, upon substantially the same grounds as those urged in support of the demurrers prior to the pleas, was made. This motion was also overruled, and the defendant was then sentenced, upon the conviction, under one of the indictments, to imprisonment in the penitentiary for the term of five years, and upon the conviction under the other indictment to a like imprisonment for the term of two years following the expiration of the previous imprisonment. The cases are brought to this court upon writs of error to review these judgments.

The counsel of the defendant has given the court much assistance in the consideration of the cases by the careful analysis he has made of the different counts. These are so numerous, presenting in many of them the same charge with confusing variations, as to obscure rather than to render clear the real offences intended.

In the indictment in case No. 923, the offence charged

against the defendant in the first four counts is set forth in the most general way. In the first of these four the defendant is charged as a director with wilfully misapplying the funds and credits of the bank. In the second he is charged with conspiring with officers of the bank to wilfully misapply its money and credits. In the third he is charged with aiding and abetting the president of the bank to misapply its moneys, funds, and credits. In the fourth count he is charged with aiding and abetting the cashier of the bank in a similar misapplication. A demurrer was interposed to each of these four general counts on the ground that it did not specify the means whereby the alleged misapplication was made, and show that they were unlawful.

The remaining counts of the indictment are more specific, some of them charging the defendant as a director with misapplying moneys, funds, and credits by depositing checks and obtaining fictitious credits thereon; others charging him with aiding and abetting the president in misapplying funds and credits in the same manner; others with aiding and abetting the cashier in a like misapplication of the funds; others with aiding and abetting the president in misapplying funds by surrendering notes; others with aiding and abetting the president in misapplying the funds by discounting unsecured notes of the defendant; others with misapplying the funds through overdrafts; others with aiding and abetting the president to misapply the funds through overdrafts.

In the indictment in case No. 922 the defendant, in some of the counts, is charged with aiding and abetting the cashier in misapplying the funds of the bank by surrendering to the defendant unpaid notes, which the bank had discounted and still held, without receiving for them the amount thereof, or any part of it; in some also with aiding and abetting the cashier to misapply the funds by discounting unsecured notes; in some also with aiding and abetting the cashier to misapply the funds through overdrafts.

For the disposition of these cases it is not necessary to pass upon each count separately. In the first instance the general counts will be considered, and then an examination made as

to the sufficiency of the specific counts upon which the government chiefly relies to sustain the prosecution. If they will not bear the scrutiny given to them, none will. The grounds of the demurrer to them will be designated when the counts are separately considered.

With reference to indictments for statutory offences, there are certain rules which govern their construction. It is usually sufficient, in such cases, to set forth the offence in the language of the statute, if it be accompanied by a statement of such facts and circumstances as will inform the accused of the specific offence, coming under the general description of the statute, with which he is charged. He must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, in order that he may be able to prepare for his defence, and, also, in case of conviction or acquittal, that he may plead the judgment in bar of further proceedings. *United States* v. *Simmons*, 96 U. S. 360; *United States* v. *Hess*, 124 U. S. 483.

A mere statement of the offence in the words of the statute, without a statement of the accompanying facts and circumstances essential to constitute a specific offence, will be insufficient. As said by this court in *United States* v. *Carll*, 105 U. S. 611, 612, speaking through Mr. Justice Gray, "In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; and the fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent." Numerous authorities were cited in support of the views expressed.

There is a very general test applicable to all indictments. If the facts alleged be established or admitted to be true, and their truth is consistent with the defendant's innocence, the indictment is insufficient, however full the description in other

respects. Applying this well-settled doctrine to the different counts of the indictments in these cases, there will be little difficulty in determining as to their sufficiency. Yet the doctrine appears to be entirely ignored by the majority of the court, or at least set aside in these cases.

The four general counts are manifestly insufficient, as they wholly fail to aver the means by which the alleged misapplication of the funds was made by the defendant, or attempted by him, in conspiracy with the president or cashier, or in aiding and abetting them.

Upon an allegation that one has misapplied the funds of a bank, the natural inquiry would be, how — in what manner? Until the manner in which the application was made and the purpose of it are shown, no misapplication can be established. There is no averment of facts in either of the counts of the indictment to show that the application of the funds was an unlawful one, and unless it appear from the facts alleged that such was the case, the application will not constitute the offence charged. Nor is there any averment of facts to show that the bank suffered any loss or damage by the misapplication. From all that is alleged it may have been the exercise of an unwise judgment, for which the defendant could not be charged under the statute, and injury from which may have been avoided by a subsequent replacement of the moneys.

In *United States* v. *Britton*, 107 U. S. 655, 669, the words "wilfully misapplied," used in the section upon which the present indictments were found, were considered, and the court, speaking by Mr. Justice Wood, said: "The words 'wilfully misapplied' are, so far as we know, new in statutes creating offences, and they are not used in describing any offence at common law. They have no settled technical meaning, like the word 'embezzle,' as used in the statutes, or the words, 'steal, take, and carry away,' as used at common law. They do not, therefore, of themselves, fully and clearly set forth every element of the offence charged. It would not be sufficient simply to aver that the defendant wilfully 'misapplied' the funds of the association. This is well settled by the authorities we have already cited. *There must be averments*

*to show how the application was made, and that it was an unlawful one.*" It follows that the demurrer to each of the four general counts was well taken and should have been sustained.

The two cases, as stated in the opinion of the court, were originally argued here upon the sufficiency of all the counts. A reargument having been ordered, it was confined principally to the eighth, ninth, tenth, and fourteenth counts. And in the opinion a copy of the eighth count is given at length as a representative one of its class, and as in framework and structure similar to all the counts to which the attention of the court was called.

This count stripped of its useless verbiage, and of its adjectives imputing supposed fraudulent motives to the conduct of the defendant, and of adverbs of objurgation, is substantially this and no more: That the defendant, Evans, did, on the 8th of May, 1891, in the district named, aid and abet the cashier of the bank to misapply an unpaid note of one Nettleton for seventy-five hundred (7500) dollars, formerly discounted and still held by the bank, by surrendering and delivering it to the defendant without receiving its amount or any part thereof, and that it was done by the defendant to injure and defraud the bank. The allegation of the motive of such surrender and delivery adds nothing to the character of the act unless its object is shown by stating the use to which the note was to be put, as that it was for cancellation or appropriation for the benefit of the defendant or of some one other than the bank, or to accomplish some object other than to obtain its payment, renewal, or security. Nor does the count aver that a valid consideration was not received for the note, or that the bank lost by the transaction. The mere charge of an intention to misapply the unpaid note is not sufficient without some allegation of the manner in which such misapplication was made. This was held in *United States* v. *Britton*, 107 U. S. 655. It was there said that to constitute the offence of wilful misapplication, there must be a conversion to the use of the offender or of some one else, of the moneys and funds of the association by the party charged. It would not be sufficient, the court added, simply

to aver that the defendant wilfully misapplied the funds of the association. "There must be averments to show how the misapplication was made and that it was an unlawful one."

It is an old doctrine, not to be forgotten in practice or in pleading, that an act lawful in itself cannot be made criminal by imputing wrong motives to the conduct of the party. Punishment is not in our days inflicted for the motives for which lawful acts are done. There is no force added to the allegation of "delivered" by the use of the word "surrendered" in this case, but rather its force is weakened. A surrender is usually made upon some right or claim, or upon coercion. The latter is not suggested here, and surrender is consistent with some useful purpose in the enforcement of a claim or right to the note.

Similar observations may be made of almost every count in both indictments. There is some fact which might be stated in connection with their allegations and which would obviate their criminality, but which is omitted, and the omission, in my judgment, makes the indictments invalid.

I do not claim that it is essential that the pleader should negative every conceivable lawful delivery, such as would be unusual though possible under some circumstances, but I do insist that a lawful delivery should be met by a negative to the natural and ordinary conduct which would be adopted by innocent parties in such cases. A note discounted at a bank, when not paid in whole or in part, is not usually surrendered to a third party without a valuable consideration, unless it be for collection or to obtain its renewal or security for it, and such usual action should be negatived by averment. No doctrine is more essential for the protection of a party accused of a criminal offence, and none should be more rigidly enforced than this — that the facts alleged by way of accusation, if admitted to be true, must be inconsistent with the inference of his innocence of the offence charged arising from the usual conduct of innocent parties in such cases.

I do not assent to the doctrine that the note might have been delivered to the defendant for a score of honest purposes which it would be unnecessary to negative, and that in

criminal pleading it is not required to anticipate and negative a natural and obvious answer to the accusation. Such is not the law as I understand it.

The counts which are more specific in their allegations, and upon the sufficiency of which the prosecution chiefly relies, will now be considered. These specific counts are grouped by the prosecution into four sets. The first set consists of counts five, ten, and eleven of the indictment in case 923. These counts are, substantially, that the defendant on the 8th of May, 1891, did knowingly, unlawfully, fraudulently, and wilfully, and with intent to injure and defraud the bank, misapply certain of its moneys, funds, and credits for his own use and benefit, to wit, the sum of fifteen thousand three hundred and thirty-three and $\frac{35}{100}$ dollars, in the manner and by the means following, that is to say, the defendant, being a director, did deposit and place to his credit in the bank his check, drawn by himself on the Keystone Bank in favor of the Spring Garden Bank, the amount being in excess of all the sums which he was then entitled to draw from the moneys and funds of the Keystone Bank, and by means of which check, thus deposited, he obtained a false credit upon the books of the Spring Garden Bank, and was thereby enabled, and did thereafter, draw out from that bank the sum mentioned for his own use, benefit, and advantage, as he then well knew, contrary to the act of Congress.

The three counts differ from each other in this, that the tenth count charges the defendant with knowingly and fraudulently aiding and abetting the president of the bank to misapply its moneys, funds, and credits, in the amount mentioned, by receiving on deposit and crediting to himself the check mentioned. The eleventh count differs only in alleging that the defendant aided and abetted the cashier of the bank in misapplying its moneys and credits in the manner mentioned. The charge is substantially the same in all three counts — that a false credit was secured by the defendant with the bank by depositing a check, drawn by him on the Keystone Bank in excess of what he knew to be his balance there, and which check was not paid. These counts are subject to the general

objection that, admitting all their statements to be correct, they are still consistent with the innocence of the defendant. The counts nowhere allege that the check on the Keystone Bank was ever presented to that bank for payment. The defendant may have overdrawn his account in that bank; the check may have been in excess of all sums which he was entitled to draw, and yet it might have been paid upon presentation. There is not, in the mere fact that one overdraws his account at a bank, necessarily any evidence that the drawer intended to defraud the bank, or any other bank with which the check was deposited. It is a matter of every day practice for depositors in a bank to overdraw their accounts. Whether checks so overdrawn will be paid may depend upon other considerations than the amount of deposits of the drawer in the bank. It would be an extraordinary position to hold that because a man drew upon a bank for more than he knew he had on deposit he should be charged by the holder with the commission of a fraud, before the latter had presented the check to the bank for payment, and payment had been refused. Whether or not the Keystone Bank would have paid it, had it been thus presented, may have depended upon the confidence which the bank might have entertained in the drawer's ultimate ability to pay. Though not entitled, in the words of the indictment, to draw at the time any sums whatever, yet he may have had such credit with the bank, from its knowledge of his character and habits, as to induce it to honor his check. It is within the experience of every one that checks thus drawn are often honored, even with a knowledge of the drawer's inadequate deposit. Other facts beside such knowledge by the drawer must be shown to justify the imputation of criminal intent to him. A demurrer was interposed to the counts mentioned, on the ground that it did not aver that the checks in question were presented to the Keystone Bank for payment and that payment was refused, and that the bank thereby became a loser. In my opinion the counts were, for that reason, insufficient, and the demurrer was well taken and should have been sustained.

The second set of counts upon which the prosecution relies are numbers six, seven, eight, nine, twelve, and thirteen of the same indictment. These also allege that the defendant, being a director of the Spring Garden Bank, caused certain checks drawn by him upon the Keystone Bank and the Fourth Street National Bank of Philadelphia for sums greater than he was entitled to draw or obtain from them, to be deposited with the Spring Garden Bank, and placed to his credit on its books, and thereby obtained a false credit and received from that bank, for his own use and benefit, the amount of such checks. But these counts also show that each of such checks was endorsed in this way: "For deposit to the credit of Nelson F. Evans. Received payment through the clearing-house." The purport of this endorsement is that the checks were passed by the bank through the clearing-house and paid there, a not unusual way of collecting checks in our large cities. The same objections that were made to counts five, ten, and eleven can be made to these counts; and also the further objection that there is an inconsistency in the allegation that thereby any false credit was obtained, the checks having endorsed on their face the statement that payment was received on them through the clearing-house.

These checks are set forth in the indictment with this endorsement, and there is no allegation that the endorsement was false or was made, or permitted to be made, by the defendant, with any intent to defraud the bank. The very face, therefore, of the checks negatives the charge of crime, and contradicts the idea of loss to the bank. If in answer to this view it be said that it is alleged that the checks were not paid, it must be observed that no averment is made of their presentation for payment or of anything to exclude the idea of negligence on the part of the bank receiving them, or that the money was not lost through the failure of the bank upon which they were drawn. The six counts differ from each other in this, that in some of them the checks are alleged to have been drawn on the Keystone Bank and in others on the Fourth Street National Bank; and in some of the counts the misapplication is charged directly upon the defendant, and in

others by his aiding and abetting the president or the cashier. On the several grounds stated a demurrer was interposed to these counts, and in my judgment it was well taken and should have been sustained.

The third set of counts upon which the prosecution relies are number fourteen, in the indictment in case 922, and number twenty, in the indictment in case 923. These counts charge the defendant with aiding and abetting the president and cashier of the bank in fraudulently misapplying its funds for the use and benefit of the defendant, by receiving and dis-. counting his note for fifteen thousand dollars, payable in three months, knowing that that note was not secured; and it was not paid at maturity, or at any other time. But these counts are defective in not alleging that the discounting of the note was in excess of the power of the president or cashier or outside of their regular duties, or that the president or cashier. was not the authorized officer of the bank to discount paper. Nor is it averred that the discount was procured by any fraudulent means, or, even, that the defendant was, at the time, insolvent or knew himself to be so. On these grounds a demurrer was interposed, and in my judgment should have been sustained.

The only remaining counts upon which the prosecution relies are numbers fourteen, fifteen, and sixteen of the indictment in case 923, and numbers eight, nine, and ten of the indictment in case 922. These counts charge in substance that the defendant aided and abetted the president or the cashier of the bank to fraudulently misapply a large amount of its funds by surrendering to him for his use and benefit certain notes of one Nettleton, discounted by the bank and held as part of its assets, without receiving for the bank the amount thereof, or any part thereof, and that such surrender was fraudulently made to injure the bank. The counts in the indictment in case 923 charge that the defendant aided and abetted the president of the bank in the fraudulent misapplication. The counts in the other indictment charge that the defendant aided and abetted the cashier in such misapplication of the funds. These counts do not show, in either case, *any*

*application of the surrendered notes to the use and benefit of the defendant as charged,* nor do they contain any averment that the defendant did not receive the notes as agent, for collection, or to obtain their renewal, which would readily suggest themselves as an answer to the alleged unlawful surrender, or that the bank was in any way a loser thereby. The defect in these counts is substantially the same pointed out in considering the eighth count of No. 922, a copy of which is set forth in the opinion of the court.

The allegations of fraudulent conduct and motive in the transactions, for which the indictments were found, are repeated with wearisome frequency, yet they are of no avail unless accompanied by a statement of facts from which such fraud must necessarily be inferred. A party is not to be condemned by the multitude or opprobriousness of the adjectives applied to his conduct or motives, unsupported by the facts, or, as said by Lord Chief Justice Holt, " a fact that appears to be innocent cannot be made a crime by adverbs of aggravation." Fraud is a conclusion of law from facts respecting the transactions designated, and if they do not necessarily tend to such conclusion, the allegation falls to the ground, however often repeated or with whatever amount of earnest asseveration.

Similar views are announced with great clearness and force in *United States* v. *Watkins,* decided by the Circuit Court for this District over sixty years. 3 Cranch C. C. 441. The defendant, who was the Fourth Auditor of the Treasury of the United States, was indicted for devising and intending fraudulently to obtain for his private use moneys of the United States, by means of letters to and drafts on the navy agent at New York and the navy agent at Boston, and certain requisitions on the Treasury of the United States, also sent by him to them, said letters, drafts, and requisitions being used as false pretenses to enable him to obtain the moneys. There were three indictments found against him, and objections were taken to the sufficiency of their allegations of fraud. In considering the objections the court said: " Fraud is an inference of law from certain facts. A fraud, therefore, is not suffi-

ciently set forth in an indictment, unless all the facts are averred which in law constitute the fraud. Whether an act be done fraudulently or not is a question of law so far as the moral character of the act is involved. To aver that the act is fraudulently done is, therefore, so far as the guilt or the innocence of the act is concerned, to aver a matter of law, and not a matter of fact. An averment that the act was done with intent to commit a fraud is equivalent to an averment that the act was done fraudulently. No epithets, no averment of fraudulent intent, can supply the place of an averment of the fact or facts from which the legal inference of fraud is to be drawn. Starkey, in his late treatise on Criminal Pleadings, says: 'Whether particular circumstances constitute an indictable fraud is a question of law; and, therefore, according to a fundamental rule of description in indictments, such circumstances must be set out in order to show that the facts amount to an indictable offence.' And he quotes Archbold on Criminal Pleadings as follows: 'An indictment for an offence against the statute must with certainty and precision charge the defendant to have committed acts under the circumstances, and with the intent mentioned in the statute; and if any one of these ingredients in the offence be omitted, the defendant may demur, move in arrest of judgment, or bring a writ of error. The defect will not be aided by verdict, nor will the conclusion, *contra formam statuti*, cure it.' "

The charges in the two indictments, by their very number, setting forth over seventy-five distinct offences, after dismissing counts for over one hundred other offences — those retained varying from each other by confusing differences — were calculated to embarrass and oppress the defendant in his defence. The allegations of fraud in conduct and motive not being supported by any averment of facts from which such fraud is necessarily inferable, the other allegations as to the transactions charged are, upon a reasonable construction, consistent with the innocence of the defendant. And indictments, in my opinion, ought not to be viewed with favor which, by the very multitude of their counts, serve to embarrass and confuse the accused. If an offence cannot be stated in less than one hun-

dred counts of an indictment, I do not think that public justice will suffer if the indictment be dismissed.

My conclusion is that the indictments on all the counts retained are insufficient to hold the defendant, and that the judgment below thereon should be reversed in both cases and judgment entered upon the demurrers in each case for the defendant, and that he be discharged therefrom.