## AMERICAN NAT. BANK & TRUST CO. OF CHICAGO v. UNITED STATES.
### No. 6815.

Circuit Court of Appeals, Seventh Circuit.
June 13, 1939.

784

Stephen A. Cross, of Chicago, Ill. (Kenneth B. Kirk, of Chicago, Ill., of counsel), for appellant.

Keith L. Seegmiller, of Washington, D. C., William J. Campbell, U. S. Atty., and William M. Lytle and Benjamin F. Schwartz, Attys., Department of Justice, all of Chicago, Ill., Julius C. Martin, Director, Bureau of War Risk Litigation, and Fendall Marbury and Samuel Flatow, Attys., Department of Justice, all of Washington, D. C., for the United States.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This action, commenced November 30, 1935, was brought by the plaintiff as conservator of the estate of George T. Thompson, Incompetent, to recover on a policy of war risk insurance issued to Thompson, who was in the United States Army from August 22, 1918 to December 16, 1918. The policy lapsed for non-payment of premiums January 31, 1919. In its complaint, plaintiff alleged that before its lapse the policy had matured by reason of insured's total and permanent disability due to mental impairment of his faculties (dementia praecox). This the government denied. The verdict of the jury was in favor of the defendant, upon which judgment was entered, and this appeal followed. The error assigned deals with the court's instructions to the jury.

The record discloses that the claim for insurance benefits was filed with the Veteran's Administration on June 3, 1931, and denied by the Administrator's Board of Veteran's Appeals on November 13, 1935, and that suit was timely commenced on November 30, 1935. Thompson was first hospitalized for a mental disability on December 10, 1923. On December 29, 1923 he was sent to the Illinois State Hospital for the insane and remained there until January 18, 1928. He was then transferred to the United States Veterans' Hospital at North Chicago, where he is now confined. There is no controversy that the insured has been insane since his hospitalization.

A number of witnesses testified on behalf of the plaintiff, not very convincingly, that is true, but they did testify that immediately after the insured was discharged he experienced ideas of grandeur; that his conversation was rambling and incoherent and that he was not right mentally; that he wanted to sell a friend an automobile, and spoke of having several when he had none, and that when he took the prospective purchaser to see the automobile, all he had was junk, pieces of tires, and discarded wheels; that he brought automobile tools and tires into his bed, and scattered them all over the house; that he pulled out the screen, fastened to his bedroom window, saying he wanted fresh air; that he developed a religious fanaticism and talked constantly about religion; that he would, without any justification, start drilling and act as if he were going to shoot a gun; that he would talk continually for as much as half a day at a time with no beginning and no ending; and that he spoke frequently of committing suicide and dwelled upon the subject of death. The record further discloses that before entering the service the insured worked steadily but did no work after his discharge.

The medical testimony on behalf of the defendant was to the effect that there were no indications of any mental disability until more than five years after Thompson's discharge from the army.

After the trial court had informed the jury that it was incumbent upon the plaintiff to prove its case by the preponderance of the evidence, the court further instructed the jury that this burden was enhanced by reason of the long delay in filing suit, and that, in the absence of clear and satis-

factory evidence explaining, excusing, or justifying it, the delay was to be taken as strong evidence that the soldier was not totally and permanently disabled before the policy lapsed.

The burden was on the plaintiff to prove its case by a preponderance of the evidence only and the court erred in instructing the jury that that burden was enhanced.

Counsel for defendant, however, insists that here there was no substantial evidence that the soldier was totally and permanently disabled during the period of insurance, and consequently no prejudice resulted to the plaintiff. In other words, he contends that a peremptory instruction, which he had offered in due time and which the court had refused, instructing the jury to find for the defendant, should have been given.

A question of law is thus presented, which calls for a consideration of the record, not for the purpose of weighing conflicting testimony, but for the purpose of determining whether there was some evidence, competent and substantial. In the consideration of such a question, it is the duty of the court to take that view of the evidence, and all the inferences that may properly be drawn therefrom, most favorable to the plaintiff, and, if the evidence is of such a character that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury. So too, the admonition of Mr. Justice Holmes in White v. United States, 270 U.S. 175, 180, 46 S.Ct. 274, 275, 70 L.Ed. 530, that the relation established between the soldier and the government is "a relation of benevolence established by the Government at considerable cost to itself for the soldier's good" ought not to be forgotten, and, of course, it is to be understood that the term "substantial evidence" is not to be used in the sense of reliability, but rather in contradistinction to the term "scintilla of evidence." United States v. Tyrakowski, 7 Cir., 50 F.2d 766, 770. It is with these principles in mind that the question must be determined.

As we have related above, there was testimony indicating that before Thompson enlisted he worked steadily and that immediately after his discharge he was mentally disabled, was insane, and did no work. These circumstances and facts warranted submitting to the jury, with proper instructions, the question whether the insured was totally and permanently disabled on January 31, 1919.

The judgment of the district court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.