## DIXON v. UNITED STATES.
### No. 7092.

Circuit Court of Appeals, Seventh Circuit.
July 5, 1940.

Julius C. Martin, Wilbur C. Pickett, and Young M. Smith, all of Washington, D. C., for appellant.

Howard L. Doyle, U. S. Atty., Howard C. Knotts, and Lawrence Hoff, all of Springfield, Ill., and C. C. Worthy, of Hardin, Ill., for appellee.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is a war risk insurance case in which the defendant is appealing from a judgment based upon the verdict of a jury that John L. Dixon was permanently and totally disabled on January 13, 1919.

Dixon entered the services on April 3, 1918, and was granted war risk insurance, payable in the event of total permanent disability occurring while the contract was in force. He went overseas and as a sergeant in the Engineering Corps participated in three major engagements. On January 13, 1919, while in France, he suffered an injury to his left foot and was confined to a hospital for five days. He was honorably discharged from service on April 5, 1919.

In his petition Dixon alleged that he became permanently totally disabled on January 13, 1919 as a result of traumatic neuritis, sciatic nerve, left; psycho-neurosis and sciatic perineuritis. And so it was incumbent that he prove that his disability was of such a character that it rendered him incapable of pursuing with reasonable regularity any substantial gainful occupation and that such disability was based upon conditions which rendered it reasonably certain that his disability would continue throughout his life.

In discussing what constitutes permanent total disability the Supreme Court in Lumbra v. United States, 290 U.S. 551, page 559, 54 S.Ct. 272, 276, 78 L.Ed. 492, said: " 'Total disability' does not mean helplessness or complete disability, but it includes more than that which is partial. 'Permanent disability' means that which is continuing as opposed to what is temporary. * * * The mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability."

In United States v. Phillips, 8 Cir., 44 F.2d 689, 691, it was said: "The term 'total and permanent disability' does not mean that the party must be unable to do anything whatever; must either lie abed or sit in a chair and be cared for by others. The test laid down in the cases is well stated in United States v. Sligh (C. C.A.) 31 F.(2d) 735, 736, as follows: 'The term "total and permanent disability" obviously does not mean that there must be proof of absolute incapacity to do any work at all. It is enough if there

642

is such impairment of capacity as to render it impossible for the disabled person to follow continuously any substantially gainful occupation.'"

In our case counsel for the defendant contends that there is no substantial evidence to support the verdict, and that a peremptory instruction, which he offered at the close of all the evidence, instructing the jury to find for the defendant, should have been given.

Under such circumstances, as this court stated in American National Bank & Trust Co. v. United States, 7 Cir., 104 F.2d 783, 784, 785: "A question of law is thus presented, which calls for a consideration of the record, not for the purpose of weighing conflicting testimony, but for the purpose of determining whether there was some evidence, competent and substantial. In the consideration of such a question, it is the duty of the court to take that view of the evidence, and all the inferences that may properly be drawn therefrom, most favorable to the plaintiff, and, if the evidence is of such a character that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury."

The record discloses that prior to entering the service Dixon was in good physical condition and had been engaged as a farm hand, clerk, metal polisher, and in several other occupations. He was injured at Revigney, France when a troop train ran over his left heel, mashing the gristle part of the heel flat, injuring his back and rendering him unconscious. He was placed in a base hospital where X-rays were taken of his foot, but no examination was made of his back or hip. After his discharge from the hospital, he was relieved of all duties, but reported for inspection regularly, his comrades carrying his pack. Returning to the United States he was transferred to Camp Taylor and there discharged from the service, the army surgeon certifying that he considered the disabling effects of the injury negligible, and a Medical Board of Review reported that he was physically and mentally sound.

An orthopedic surgeon testified for the defendant that he had examined Dixon on April 8, 1927, and found nothing to indicate any definite organic pathology. This same surgeon testified that on November 25, 1928, he found "an ostearth-ritis lumbar spine slight," but did not find traumatic neuritis or sciatic perineuritis.

After Dixon's discharge from the army and in the latter part of July 1919 he was employed as a mechanic and continued at that work until November 1, 1919, when the condition of his health compelled him to quit. For six or seven months, beginning in April 1920, he was engaged in a used car business and during the fall or winter did a little work around a drug store. He was in a Government hospital from March 1921 to May 1922. From 1924 to 1928 he served as a police magistrate, earning $50 to $60 per year. Thereafter he did not work until the fall of 1935 when for a period of six or seven weeks he earned $12 to $15 per week operating a washing machine in an apple orchard. He did the same work in 1937.

Six witnesses testified to Dixon's nervous condition, immediately after and since his discharge from the service, stating that he would "fly off the handle and holler"; that he would "commence to jump and yell"; that it was not "just temperament;" that it was an "illness, a twitching and shaking"; that he was "jittery"; that he could not "stand excitement of any kind;" and that "he wouldn't stay in any one place any length of time."

A physician testifying for plaintiff stated that on December 12, 1919, he found Dixon in a highly nervous condition which gradually became worse; that subsequent examinations up to April 1938 confirmed his diagnoses that Dixon was suffering from pyschoneurosis and sciatic perineuritis caused by the injury to his heel and that these conditions were permanent.

Dr. Groves B. Smith, a specialist in nervous and mental diseases, testified for the defendant that pyschoneurosis is a functional disorder which may be induced by trauma; that a psychoneurotic loses confidence in his ability to do things; that work is the primary treatment of such an individual; and that even though one had had psychoneurosis for twenty years, it was still curable.

In this case the evidence was of such a character that reasonable men in a fair and impartial exercise of their judgment might reach different conclusions, and under such circumstances the trial court was warranted in submitting the case to the jury. United States v. Tyra-

kowski, 7 Cir., 50 F.2d 766 and United States v. Hobaker, 7 Cir., 91 F.2d 7.

Finding no reversible error, the judgment of the District Court is affirmed.