## UNITED STATES v. STEINER.

### SAME v. MILLER.

Nos. 8806, 8818.

Circuit Court of Appeals, Seventh Circuit.
Dec. 18, 1945.

Rehearing Denied Jan. 8, 1946.
Writ of Certiorari Denied March 11, 1946.
See 66 S.Ct. 808.

Walter R. Arnold, of South Bend, Ind., and Don F. Kitch and John Kitch, both of Plymouth, Ind., for Steiner, appellant.

Walter R. Arnold, of South Bend, Ind., and Charles W. Davis, of Mishawaka, Ind., for Miller, appellant.

Alexander M. Campbell, U. S. Atty., of Fort Wayne, Ind., James E. Keating, Asst. U. S. Atty., of South Bend, Ind., John E. Scott, O.P.A., of Indianapolis, Ind., and Helen M. Bloedorn, Dept. of Justice, of Washington, D. C., for appellee.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

BALTZELL, District Judge.

Defendants-appellants, hereinafter referred to as defendants, were each convicted of the violation of the Emergency Price Control Act of 1942 and of a regulation of the Office of Price Administration in that they, being auctioneers, sold at public auction sales certain agricultural implements at prices in excess of the maximum or ceiling prices of such implements, as fixed by such law and regulation. Because of the similarity of the offenses and of the evidence upon which defendants were convicted, the two appeals were consolidated for the purpose of the arguments in this court. They may be disposed of in a single opinion.

In cause No. 8806 the defendant, Harold M. Steiner, was charged in an indictment in seventeen counts with the violation of certain provisions of the Emergency Price Control Act of 1942 and of Maximum Price Regulation No. 133 in that he sold and delivered, as an auctioneer at a public auction sale, certain farm and agricultural implements at prices in excess of the maximum or ceiling price of such implements, as fixed by such regulation. The material charges in the several counts are identical, with the exception of the implements sold, the amount for which such implements were sold over and above the maximum or ceiling price, the individuals to whom sold, and the place where or county in which such sales were made. Counts 5 and 8 were withdrawn and the defendant was convicted upon each of the remaining 15 counts. Sentence was imposed upon each of such counts.

In cause No. 8818 the defendant, Jonas A. Miller, was charged in an indictment in twelve counts with the violation of certain provisions of the Emergency Price Control Act of 1942, as Amended, and of Maximum Price Regulation No. 133, as Amended, in that he sold and delivered, as an auctioneer at public auction sales, certain farm and agricultural implements at prices in excess of the maximum or ceiling prices of such implements, as fixed by such regulation. As in cause No. 8806, the material charges in the several counts were identical, with the exception of the articles or implements sold, the amount for which such articles or implements were sold over and above the maximum or ceiling price, the individuals to whom sold, and the place where or county in which such sales were made. The defendant was convicted upon each of such counts and sentence imposed.

Motion for a new trial was filed by each defendant, which motion was overruled. Prior to such ruling, however, each defendant filed an application for leave to file a complaint in the Emergency Court of Appeals whereby he sought to attack the validity of the price regulation, for the violation of which he was convicted. Such applications were denied and these appeals followed.

It is the contention of the defendant in each appeal that the district court erred in overruling the demurrer to each count of each indictment; that such court erred in refusing to instruct the jury at the conclusion of all the evidence to return a verdict for the defendant in each case, and in refusing to give certain other tendered instructions, and in giving certain instructions; and that such court erred in denying the application of the defendant in each appeal for leave to file a complaint in the Emergency Court of Appeals.

■ The charges contained in the various counts of the indictments are set forth in plain, clear and concise language—language that cannot be misunderstood. There are no conclusions of fact or conclusions of law contained therein, as contended by the defendants. The charge in each count is, substantially, that the defendant, on a certain date named therein, acting as an auctioneer at a public auction sale did, unlawfully, wilfully, and knowingly, agree, solicit and offer to sell and did sell and deliver certain agricultural implements set forth in the indictment to the individuals named therein. It is further charged that such sale was in violation of the Emergency Price Control Act of 1942 or of such Act as Amended, and of Maximum Price Regulation No. 133, or of such Regulation, as Amended, in that such sale was for an amount in excess of the maximum or ceiling price permitted under such law and regulation. The indictments clearly advise the defendants of the date of the sale, the person to whom sold, the place where the sale took place, the amount for which each implement was sold and the maximum or ceiling price for such implement under the above law and regulation. It is apparent that no clearer statement of the charges could have been made. The defendants knew fully the charges which they were called upon to meet and the allegations were sufficient to bar a subsequent prosecution for the same offense. The demurrer was properly overruled. Evans v. United States, 153 U.S. 584, 14 S.Ct. 934, 38 L.Ed. 830; United States v. Wagoner, 7 Cir., 1944, 143 F.2d 1.

As stated by the defendants in their briefs, "the evidence on every material fact was wholly undisputed as to each of the transactions claimed to constitute the offense * * *." In other words, the evidence relied upon to sustain the charges contained in the several counts of the indictments is undisputed, but there is a dispute between the government and the defendants as to the effect of such evidence. The question of whether or not there is competent and substantial evidence to support the verdict of the jury is presented by the overruling of the motion for a directed verdict as to each defendant at the conclusion of all the evidence. Defendant in each case was an auctioneer employed by the owner of agricultural implements to sell such implements at public auction. Many implements, the sale price of which was not controlled by any regulation as to the maximum or ceiling price for which it could be sold, were sold and delivered at the various auction sales conducted by the defendants. Some implements, however, such as tractors, etc. upon which there was a maximum or ceiling price fixed by the regulation, were delivered to the competitive bidder who made the highest bid as to the yearly rental to be paid under an instrument termed a "Lease of Equipment." In other words, defendants contend that the delivery of the implements in question was made pursuant to a lease for a term of ten years, instead of an outright sale, and, therefore, the law and regulation were not violated.

The evidence discloses that there was executed at the time of the transfer and delivery of the implements in question an instrument designated as a "Lease of Equipment" which was signed in a majority of the cases by the owner of the property therein designated as "the lessor" and the person to whom such implements were transferred and delivered and designated in the instrument as "the lessee." As before stated, it is the contention of the defendants that the transaction was, in fact, a lease, not a sale, and that, therefore, they (the defendants) did not violate the law, as charged in the indictments. It is important, therefore, to examine the instrument and the testimony of the witnesses to determine the question of whether this was, in fact, a good faith lease, or whether it was an instrument devised by the defendants to circumvent the statute and regulation. Such instrument was devised and prepared by the defendants or under their direction. The fact that it was entitled a "lease" does not mean, necessarily, that it was, in reality, a "lease," and not a contract of sale. The provisions of the instrument were the same in each instance, with the exception of "the character of the

implement, the names of the parties (lessor and lessee) and the amount of the rental."

A careful examination of the evidence discloses the fact that many of the bidders considered the transaction to be an outright sale, instead of a lease of the implements. The defendants, in many instances, announced that the implements were to be "sold under a ten-year lease" and that they were "selling a lease." It is significant that, under the terms of the "lease," the entire amount of the purported rental of the implements over a period of ten years was required to be paid before the "lessee" could take possession of such implement, and such amount was actually paid in each instance, or a good promissory note executed in payment of the same. This amount greatly exceeded the maximum or ceiling sale price of the implements. Furthermore, it is provided that "The lessee shall list the chattels as *his* property for taxation and pay and discharge when due any and all taxes and other governmental excises and exactions whatsover on account of the *ownership,* operation, or this bailment of the said chattels, and hereby indemnifies and agrees to hold the lessor harmless therefrom." (Our italics). It is further provided that should the "lessee" or his assign make or undertake to make disposition of the chattels that "the purchaser in good faith shall, notwithstanding any lack of consent on the part of the lessor, take good title thereto as against the lessor, and the lessor shall then be entitled to full appropriation of the deposit * * *." In other words, if and when the "lessee" concludes to sell the chattels to an innocent purchaser he can give a good title thereto without the payment of any sum to the original owner or "lessor" other than the original payment. It is very unusual to have such provisions in a lease if it is, in fact, a lease. It is also very unusual to provide for the payment of the entire rental in advance for a period of ten years, which amount greatly exceeds the maximum or ceiling selling price of such implement. According to the testimony, some of the owners of the implements never signed the instrument designated as a lease, and never saw it, never authorized the defendants to have the same prepared, or to use the same. Furthermore, some "lessees" actually mortgaged the implements as their own property, and the mortgages were recorded.

The mere fact that the equipment may have been leased would not necessarily be in violation of the law. But, if the purported lease was simply a vehicle for the circumvention of the law, and the transaction was, in reality, a sale—not a lease—and the price received was over and above the maximum or ceiling price, then, such transaction would be in violation of the law and regulation if done knowingly, intentionally and wilfully. It cannot be denied that the amount received by the owner of the implements—whether it be termed rental or sale price—was greatly in excess of the maximum or ceiling sale price of such implements. A careful examination of the "lease" and of the evidence leaves no doubt that the transactions were a wilful attempt upon the part of the defendants to circumvent and evade the law and regulation, that such transactions were outright sales, and not leases, and were in excess of the maximum or ceiling prices as fixed by the law and regulation. There was competent and substantial evidence to support the verdict of the jury. Therefore, the motions for directed verdict were properly overruled. Dixon v. United States, 7 Cir., 113 F.2d 640.

Exception was taken by the defendant Steiner, in cause No. 8806, to that part of the court's charge to the jury which undertook to construe the instrument designated as a "lease" wherein it was said:

"There have been admitted in evidence, certain instruments which bear the heading 'Leases of Equipment.' They are exhibits and will be taken by you to the jury room. It is my duty, as part of these instructions to you, to construe these instruments. I shall say that they are all identical, that is, it becomes my duty to inform you as to the meaning, as a matter of law, of these written instruments, called 'Leases of Equipment.' Therefore, I instruct you that these instruments are not to be construed as, or to be given the legal effect of a lease in fact, regardless of the fact that they are designated 'leases,' and regardless of the fact that the people who signed them are designated 'lessee' or 'lessor.'

"I instruct you that the legal effect to be given this evidence, namely, each of these so-called leases, is that it is a contract of sale, or part of a contract of sale, or are evidences of a sale of the items described in the instrument, if you find from all of the

other evidence, that a sale involving such item or items took place; in other words, if you find that the owner of the item did transfer his interest in the item to the buyer, for a price, then, I instruct you, that this instrument herein termed a 'lease of equipment' as involved in the transaction, is not a lease but part of and in effect a written agreement evidencing such sale, if you find a sale to have taken place.

"You are further instructed that in such instance these instruments, in and of themselves, do not constitute a defense to the violations charged in the various counts of the indictment."

In substance, the court gave the same instruction in cause No. 8818 to which the defendant Miller excepted. It was the duty of the court to construe the legal effect of the written instrument designated as a lease. Hamilton v. Liverpool, London & Globe Insurance Co., 136 U.S. 242, 10 S. Ct. 945, 34 L.Ed. 419; Rode v. Gontermann, 7 Cir., 1930, 41 F.2d 1; Peerless Weighing & V. Mach. Corp. v. International T. S. Corp., 3 Cir., 126 F.2d 239; Copp v. Van Hise, 9 Cir., 119 F.2d 691. The court correctly construed the instrument, and no error was committed in giving the above instruction. It afterwards gave, at the request of the defendant Steiner, the following instruction in cause No. 8806:

"While a deceitful contrivance or fraudulent device to evade the provisions of a lawful regulation may not be legally resorted to for effective accomplishment of the evasion, yet if the defendant, in good faith, conscientiously believed that he was not violating the law in anything that he did do or failed to do as shown by the evidence, he is not guilty of willfully violating the regulation. This is true notwithstanding his act or omission may, as a matter of law, constitute an evasion of the provisions of a regulation."

This instruction was given by the court of its own motion in cause No. 8818, and it properly left to the jury the question of the good faith and wilfulness of the defendant in each appeal. Other tendered instructions were properly refused, and there was no reversible error in the instructions given.

■ Within the permitted time defendants made application to the district court for leave to file a complaint in the Emergency Court of Appeals setting forth their objections to the validity of Maximum Price Regulation No. 133. Defendants complain of the denial of their applications. The applications were filed pursuant to the procedure provided for in the Emergency Price Control Act of 1942 ("the Stabilization Extension Act of 1944," Pub. Law 383, 78th Congress, 2nd Session). Section 204 (e) of this Act 50 U.S.C.A. Appendix § 924(e) contains the provisions under which such an application may be filed. The statute provides that within five days after judgment in any criminal proceeding involving an alleged violation of any price regulation, the defendant may apply to the court in which the criminal proceeding is pending for leave to file in the Emergency Court of Appeals a complaint against the Administrator of the Office of Price Administration setting forth his objections to the regulation which he is alleged to have violated. The statute further provides that "The court in which the proceeding is pending shall grant such leave with respect to any objection which it finds is made in good faith and with respect to which it finds there is reasonable and substantial excuse for the defendant's failure to present such objection in a protest filed in accordance with section 203 (a)." Sec. 203 (a) 50 U.S.C.A.Appendix § 923 (a) provides for the filing of a protest with the Administrator by any person subject to a regulation against the provisions of the regulation. This statute does not make the granting of an application merely a matter of judicial whim, but provides that it shall be granted if it is "made in good faith," and if there is "reasonable and substantial excuse" for failure to file a protest with the Administrator. By his ruling denying the applications, the district judge apparently found that there was no such good faith or no such reasonable and substantial excuse, and there is no evidence in the record to the contrary. Even though it was discretionary, there was no abuse of discretion shown. The applications were properly denied.

There was no error in the rulings of the court in the admission of certain exhibits in evidence of which the defendants complain.

The judgment in each appeal is affirmed.