BIJUR MOTOR APPLIANCE COMPANY, complainant-respondent,

*v.*

INTERNATIONAL ASSOCIATION OF MACHINISTS, DISTRICT No. 15, et al., defendants-appellants.

[Argued March 9th, 1921.   Decided June 20th, 1921.]

The statute of 1909 (*P. L. 1909 p. 270*) permitting an appeal to this court by persons adjudged by the court of chancery to be in contempt for acts done or omitted elsewhere than in the presence of the court, does not conflict with any provision of the constitution of the state relating to the jurisdiction of the court of chancery, and is not an unconstitutional exercise of power by the legislature.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Buchanan, whose opinion is reported in *92 N. J. Eq. 183.*

*Mr. Mark A. Sullivan,* for the appellants.

*Mr. Merritt Lane,* for the respondents.

The opinion of the court was delivered by

BERGEN, J.

Certain members of the defendant association were adjudged guilty of a criminal contempt for violating an order of restraint made by the chancellor of this state, and as punishment for said contempt the chancellor ordered defendants to be confined in the county jail of one of the counties of this state for a period of three months, and from thence until a fine of $50, which was imposed upon each of them, be paid to the State of New Jersey. From this order the defendants have appealed to this court, claiming the right to do so by virtue of a statute of this state (*P. L. 1909 p. 270*), which declares that

"Whenever any person or corporation shall be adjudged in contempt by the court of chancery of the State of New Jersey, for acts done or omitted, elsewhere than in the presence of the court, and such court shall, in consequence, impose upon such person or corporation any fine or imprisonment or other punishment, such person or corporation may appeal from such adjudication to the court of errors and appeals, which appeal shall be taken and prosecuted, in all respects, as other appeals are taken and prosecuted from the said court of chancery."

The general purpose of the original bill of complaint was to obtain a decree enjoining defendants from interfering with the free flow of labor seeking, or intending to seek, employment with the complainants. Thereupon a rule to show cause was allowed why a temporary restraining order should not issue in accordance with the prayer of the bill. That order contained a restraint enjoining the defendants, among other things, "from parading in the neighborhood of the plant of the complainants bearing placards or otherwise indicating that a strike is in progress at complainant's plant, from picketing the place of business of complainant's." It being represented that this portion of the order had been violated by the defendants, an order to show cause was allowed why the defendants should not be adjudged guilty of a contempt of the court, and, on the hearing of that rule, the defendants were adjudged guilty, in that they "had picketed the place of business of complainant, and paraded in the neighborhood of the plant of the complainant bearing placards with the inscription 'General strike on at the Bijur Motor Appliance Co. for a living wage,'" in violation of orders of the court made on the 3d day of August, 1920, and on the 17th day of August, 1920. It is conceded that this appeal would not lie except for the statute of 1909, above cited, but the respondent urges that this statute is unconstitutional and therefore no appeal lies to this court. Without considering the extended arguments urged in the briefs of the respective parties for and against the proposition, we deem it sufficient to say that its constitutionality has been approved by this court in *Staley v. South Jersey Realty Co., 83 N. J. Eq. 300*. In that case Mr. Justice Garrison, speaking for this court, said that as the law stood prior to the statute of 1909, no appeal would lie from an adjudication of criminal contempt, but that "the legislature has

since given a right of appeal, under which the present case is now before us," and that because of the previous absence of a right of appeal in cases of criminal contempt "the questions that now arise are, for the most part, *res nova* in this court," and thereupon proceeded to the consideration of the appeal taken under the statute of 1909, and reversed the judgment, which could not have been done if the act of 1909 was unconstitutional. The adjudication in that case established the constitutionality of the act, perhaps not in distinct words but by proper implication from the action taken, for it cannot be assumed that this court, in view of the state of the law prior to the act of 1909, would have assumed jurisdiction under that act if unconstitutional.

The appellants, in support of this appeal, argue that the order to show cause recites that the contempt was of an order dated on the 17th of August, 1920, whereas the fact is it was dated on the 16th of August and filed on the 17th. The argument, based on this error in date in the order to show cause, has no merit, because the record shows that these defendants had notice that the order was in fact made on the 16th, but whether dated on the 16th or on the 17th they had knowledge of its contents and had no right to violate the order which they knew was in fact made on the 16th of August, and which it was charged they had violated before the order to show cause in the contempt proceedings under date of August 25th, 1920, was served, describing the orders violated as made on the 3d and 17th of August, respectively.

The appellants next urged that, although the defendants had violated the order of August 3d, 1920, they could not be adjudged guilty because that order was superseded by that of August 16th, but, manifestly, there is no force in this claim, because they were not convicted of violating the order of August 3d but of the order of August 16th. The recital of the preliminary order of August 3d, in proceedings to enforce a violation of the restraint in the later order, which was a sequence of the earlier, has no significance, nor was it injurious to defendants.

The next point is, that the rule to show cause was uncertain and confusing because the charge was the violating of clauses M

and N of the restraining order, when it was evidently intended to charge a violation of clauses L and M of the order. We see nothing confusing in this. The defendants knew what they were charged with, and it was for the complainant to prove a violation of either of the clauses, and that the defendants had notice of, and if a violation of either was proven it was enough.

The last point made is, that the proof was insufficient to justify an adjudication of contempt. We agree with the finding of the court of chancery that there was sufficient evidence to support the adjudication that these defendants were parading . with placards and violating the restraint as to picketing.

The order appealed from is affirmed, with costs.

MINTURN, J. (dissenting).

Upon the preliminary question involving the constitutionality of the act of 1909, I agree with the views expressed in the majority opinion. I dissent from the result reached upon the merits for the reasons following: These defendants, former employes of the complainant, were on strike for what they termed "a living wage." They did not infest the factory or walk or parade nearer than six hundred feet of it, upon Fourteenth street, one of the most traveled and important highways of the city of Hoboken, terminating at the Hudson river, and there connecting with the ferries to New York. The city itself is so limited in territorial area that it is colloquially termed the "mile square city." On various occasions during the strike they walked quietly up and down this public highway, sometimes singly and at other times in pairs or more, but never, so far as the record shows, violating any law or ordinance, but comporting themselves as ordinary wayfarers upon a public highway. Suspended about their necks they carried placards bearing the words "General strike of the Bijur Motor Appliance Company for a living wage." The factory was located on a private way ending in a *cul-de-sac*. The photographs offered in evidence show the defendants walking on the public highway with the placards suspended about them. In this situation the vice-chancellor, after the filing of the bill, granted an *ad interim*

Bijur, &c., Co. *v.* Inter. Asso. Machinists. *92 N. J. Eq.*

restraining order directing the defendants to refrain, *inter alia*—

(1) "From participating in any manner whatsoever or from contributing money or advice towards the success of the strike."

(2) "From advising with, participating in, encouraging, persuading or consulting with" striking employes.

(3) "From addressing persons willing to be employed."

(4) "From loitering or picketing in the streets or on the highways or *public places near the premises or near any premises* with intent to procure the personal molestation and annoyance of persons employed or willing to be employed."

(5) "From picketing along the Hoboken manufacturers railroad."

(6) "*From parading in the neighborhood of the plant bearing placards or otherwise indicating that a strike is in progress.*"

(7) "From going either singly or collectively to the house of any of complainant's employes for the purpose of intimidating, urging, annoying or coercing them."

(8) "From ordering, commanding, directing, assisting, aiding or abetting in any manner whatever any person to attempt to commit or to commit any of the aforesaid acts."

The defendants, manifestly, could not escape from this proscription of human liberties, and continue to walk the streets, call upon their neighbors, or contribute to their societies, to relieve distress among a striker's family, and, hence, when they were found walking the public streets they were apprehended in *flagrante delicto*. This discovery resulted in a rule requiring them to show cause why they should not be punished for contempt, "in that they did picket the place of business of complainants, and parade in the neighborhood of the plant, bearing placards, or otherwise indicating that a strike is in progress at complainant's plant."

The complainant's solicitor was appointed to prosecute them; they appeared *inops consillii*, and they were convicted and sentenced to the county jail of Mercer county for three months, and thereafter until a fine of $50 shall have been paid by each defendant. From this proceeding the appeal has been taken. It is to be observed, *in limine*, that the proceeding is entirely

criminal in its nature, and subject to the ordinary legal require-
ments of criminal procedure, and so declared by the adjudica-
tions of this court. Upon that fact hangs the illegality of the
order appealed from. It is also to be observed that the crime
was committed in Hudson county, and that, so to speak, the
venue was laid and the trial took place in Mercer county, con-
trary to all settled law and constitutional right, and these de-
fendants were thus forced across the state, presumably, at great
expense to themselves, and tried in one county for a crime com-
mitted in another, before a tribunal, as Mr. Justice Garrison
has observed in the *Staley Case,* "which by its constitution is
both judge, jury and accuser." Nor is it to be overlooked in any
estimate of the legality and equity of the procedure invoked that
it became necessary in order to reach the trial forum, to pass en
route six vice-chancellors, any one of whom presumably could
have heard and determined the matter, sitting as they were "in
the neighborhood" of the *locus in quo.*

In *Staley* v. *South Jersey Realty Co., 83 N. J. Eq. 300,* this
court declared that "a proceeding instituted in the court of
chancery, for the purpose of having that court adjudge whether
or not, the defendant in a cause pending therein, was guilty of
a contemptuous violation of an injunction, is a criminal con-
tempt, in which the defendant is entitled to all of the substantial
rights of a person accused of crime, that are consistent with the
summary nature of the proceeding, and the processes of the
tribunal in which it is administered."

Mr. Justice Garrison, in his opinion in that case, reviewed
the leading authorities upon the subject in the courts of this
state, as well as in the federal courts, and declared, as a result
of his analysis, that "the relegation of criminal contempts to
the courts of ordinary criminal jurisdiction, insured a tribunal
in which the functions of prosecutor, judge and jury are exer-
cised by different officers, against none of whom was the con-
tumacious conduct directed; if, however, the conduct is to be
punished by the tribunal at which it was aimed, and which by
its constitution is both judge and jury, and accuser as well, it
is all the more important that there should be a scrupulous ob-
servance of the substantial rights of the defendant."

The order to show cause upon which the defendants were committed for contempt, and which answers the purpose of an indictment here, recites as a basis for the commitment "that they, and each of them, did picket the place of business of complainant, and parade in the neighborhood of the plant of the complainant, bearing placards, or otherwise indicating that a strike is in progress at complainant's plant" in violation of the *ad interim* restraining order. There is no evidence in the case that the defendants picketed the complainant's place of business, or its immediate environment. Nor does any of the photographs offered in evidence exhibit these defendants elsewhere than on the public highway. Manifestly, therefore, the charge or indictment is reduced to the allegation that the defendants exercised the ordinary communal rights of citizens of the city and walked on this main traveled public highway, which is "in the neighborhood" of the *locus in quo*.

The constitution, article 1, section 8, requires that "in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation." In *Halsey* v. *State, 4 N. J. Law 324,* it was held that an indictment that lays no place where the offence was committed is bad.

To the same effect is *State* v. *Hageman, 13 N. J. Law 314,* and *Newm. Cr. L. & Pro. 257.*

The rule in the federal jurisdiction is explicitly declared that "every ingredient of which the offence is composed must be accurately and clearly alleged in the indictment, or the indictment will be bad and may be quashed on motion, or the judgment may be arrested or be reversed on error." *Peltibone* v. *United States, 148 U. S. 197.*

The same court also declared that, "even in the case of misdemeanors, the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court, of the exact offence intended to be charged." *Evans* v. *United States, 153 U. S. 584.*

Lord Hale defined an indictment to be "a plain brief and certain narrative of an offence, and of those necessary circumstances that concur to ascertain the fact and its nature." *2 Hale 169.*

Chitty declares that

"it is a general rule that where the act is not in itself necessarily un-
lawful, but becomes so by its peculiar circumstances and relations, all
the matters must be set forth in which its illegality consists." *1 Chit.
Cr. L. 188.*

The same writer also declares that "an indictment ought to
be certain to every intent, and without any intendment to the
contrary." *Ibid. 141.*

In consonance with this fundamental rule of pleading it was
held by the supreme court, in *Allgor* v. *State, 78 N. J. Law 313,*
that "in an indictment setting forth an act not *malum in se,* or
*malum prohibitum,* but criminal only from the aspect given to
the act by extrinsic facts, such facts should be alleged by way
of inducement or *innuendo.*" Considered in the light of these
fundamentals, the requirement in the order at bar that the de-
fendants shall not parade "in the neighborhood" of the *locus in
quo,* is in no manner definitive or informative, and leaves it to
each individual to determine for himself the limitations and
environment of a "neighborhood;" and therefore, counsel, court
and defendants may each honestly differ, upon the requirements
of a mandate containing no more definite direction or informa-
tion. Indeed, one might well be considered "in the neighbor-
hood" of the *locus,* if he were to betake himself to the very
boundaries of the mile square city. Violation of such a mandate
not sufficing for an indictment at common law, cannot be made
the basis for a criminal contempt. In the very recent case in
the United States supreme court, *State* v. *Cohen Grocery Co.
(advance opinions, April, 1921),* the Lever act, upon which the
indictment was based, was held unconstitutional, in that it left
to a court and jury the determination of the question of the
reasonableness of price charged by the accused for marketable
commodities. The statute made it "unlawful for any person
willfully to make any unjust or unreasonable rate or charge in
handling or dealing in or with any necessaries, or to conspire to
exact excessive prices for any necessities."

This legislation was declared to be violative of the fifth and
sixth amendments to the federal constitution, because it pre-
scribed "no ascertainable standard of guilt" and failed "to secure
to accused persons the right to be informed of the nature and

cause of the accusations against them." In other words, it was devoid of certainty, and fixed no rule or standard of conduct for the guidance of the accused. For the same reason an indictment, or its equivalent, as presented in the case *sub judice*, fixes nothing and defines and determines nothing, but leaves to each actor in the cause the right to determine for himself the limits and extent of an undefined "neighborhood." Manifestly, these defendants may have been perfectly honest in their motives, and harbored no intent to contemn the court, but pursued their course upon the assumption, shared by every citizen, that the public streets are common highways, which may be used *ad libitum* by the citizen, provided he comport himself with the legislation and ordinances regulating the public use. Upon an indictment, such an assumption of innocence and right would be invoked by the trial court to justify and protect defendants, while in this instance the very fact that they exercised such an ordinary public right presents the basis for their conviction.

The recital of these facts suggests that within a few years we have gone to radical lengths in practically excising from the fundamental law some of the basic personal rights which English and American legal and political history have rendered sacred, for the purpose ostensibly of vindicating a conception of contractual relationship imbedded in the legal doctrine of master and servant; a relationship which, in its very essence, involves not only the power of volition to contract, but also the power of volition to refuse to serve, when, by association of mind with mind, further service may be considered unjust or onerous from the standpoint of industrial economy or individual preference; a right of co-operative association and collective persuasion which was conceded to exist by Vice-Chancellor Pitney in *Frank & Dugan* v. *Herold, 63 N. J. Eq. 443*, and by Vice-Chancellor Stevenson in *Fletcher Co.* v. *International Association of Machinists, 55 Atl. Rep. 1077*, both of which pronouncements reached this court and received its approval.

Were anything further necessary to evince this trend of legal deflection, it is presented in the terms of the restraining order in this case, for in its mandates will be perceived the medieval

reasoning underlying the feudal concept of master and servant, which asserted a property right in the human entity, and maintained it in and out of service, under a segregation of chattel ownership and control; a doctrine which was supposed to have emitted its valedictory in the *Dred Scott Case,* and to have received its quietus in the Emancipation declaration.

These reasons lead me to favor a vacation of the order appealed from and the discharge of the defendants.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER—12.

*For reversal*—MINTURN—1.