COMMONWEALTH *vs.* FREDERIC C. NICHOLS.

Worcester.   September 28, 1926. — October 19, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Bank.   Misapplication by Bank Officer.*

The construction placed by the United States Supreme Court upon the words "wilfully misapplied" as used in U. S. Rev. Sts. § 5209, does not control the meaning of those words as used in § 53A, added to G. L. c. 266 by St. 1922, c. 313, § 2.

At the trial of an indictment charging that the defendant while treasurer of a savings bank in this Commonwealth did "wilfully misapply moneys, funds credits or other property" of the bank in violation of § 53A, added to G. L. c. 266, by St. 1922, c. 313, § 2, it appeared, in substance, that the defendant, for the purpose of procuring funds to pay debts owed by him personally, arranged with a third person to borrow money from the bank and lend it to him; that, the third person not being able to complete the transaction before the time when the defendant needed the funds, the defendant received from the third person his personal check upon a bank in which both the defendant and the third person knew there were not sufficient funds of the third person to satisfy the check, with the understanding that the defendant would indorse the third person's check and deliver it to his savings bank in

return for funds to be paid to him and that the savings bank should hold the check until the third person's note secured by proper collateral could be delivered to the bank and a loan made to him in due form; that the funds thus received by the defendant from his bank were in the form of a check payable to his order which he indorsed in blank and turned back to the bank and received for its proceeds plus the proceeds of a loan by the bank to another friend a check which was in the amount of his personal indebtedness and was drawn on a bank so distant that it could not go through clearing until the loan of the third person was properly arranged and carried out by his bank; that the check so received he used for payment of his personal debts and thereafter the loan to the third person was completed as contemplated in due course of business. The third person's note finally was paid in full and the bank suffered no loss. The defendant was found guilty. *Held,* that

(1) There was no error in the following instructions by the judge to the jury relating to the construction of § 53A of the statute above referred to: "'Wilful' implies an action by the will or mind; it means to do the act by design, intentionally, or with a set purpose, and it doesn't necessarily, as used in this statute, imply that there was a wrongful intention, or malicious or criminal design. To wilfully misapply means just this — that the person charged with committing that offence or wilfully misapplying must intentionally, or with a purpose, or a design use improperly the moneys, funds or credits of the bank and use them in a way not authorized by law";

(2) The withdrawal by the defendant of property of the bank, without authority from it, by the negotiation of its check, based upon the receipt of a check known not to be good for its face, was a misapplication of its property;

(3) The check issued by the bank to the defendant being binding upon the bank when delivered and being drawn against a check known to the defendant to be of no value, it was immaterial that the bank's check was not presented for payment until the bank properly had received funds to meet it;

(4) It was immaterial that the bank suffered no loss;

(5) Since § 53A omits the requirément of intent to defraud, it was immaterial that there might be found no intent on the part of the defendant to defraud the bank or any one else;

(6) The verdict of guilty was warranted.

INDICTMENT, found and returned on May 19, 1926, in four counts. In the first count the defendant was charged with stealing $35,000, property of the Fitchburg Savings Bank, on July 7, 1924, and in the third count with stealing $50,000 from that bank on January 15, 1925. The charge in the second count was that the defendant on July 7, 1924, being treasurer of the Fitchburg Savings Bank, "did wilfully misapply moneys, funds credits or other property of the said Fitchburg Savings Bank otherwise than as de-

scribed in" G. L. c. 266, §§ 52, 53; and in the fourth count a similar charge was made of an offence committed on January 15, 1925.

In the Superior Court, before *Bishop*, J., at the close of the evidence, the district attorney with the consent of the defendant nol prossed the first and the third counts.

The defendant was tried on the second and fourth counts. Material evidence, requests by the defendant for rulings, rulings and instructions by the judge, and exceptions by the defendant are described in the opinion. The defendant was found guilty on the second and fourth counts and alleged exceptions.

Section 53A, added to G. L. c. 266, by St. 1922, c. 313, § 2, reads as follows:

"An officer, director, trustee, agent or employee of a bank, as defined in section one of chapter one hundred and sixty-seven, who wilfully misapplies otherwise than as described in section fifty-two or fifty-three, any of the moneys, funds, credits or other property of such bank; or who, without authority from the directors or trustees of such bank, executes or issues a certificate of deposit, order or bill of exchange, or makes an acceptance, purporting to be executed, issued or made by such bank; or who, without such authority, assigns any note, bond, draft, bill of exchange, mortgage, judgment, decree or other property of such bank; or who loans the funds or credit of such bank to any individual, corporation, joint stock company, trust, association or partnership known by him to be insolvent; or who knowingly receives or accepts for such bank any fictitious, valueless, inadequate or irresponsible obligation directly or as security or endorsement unless the consideration or security is otherwise sufficient, or unless it shall be necessary to prevent loss upon a debt previously contracted in good faith; or who certifies any check drawn upon such bank unless the drawer then has on deposit with the bank and entered to his credit on its books not less than the amount of money specified in the check; or who resorts to any fictitious or colorable loan, transfer or device to avoid any provision of law relating to such bank; or who knowingly

makes or causes to be made any false entry in any book, report or statement of such bank; and any person who knowingly aids or abets any violation of this section shall be punished by a fine of not more than ten thousand dollars or by imprisonment in the state prison for not more than ten years, or in a jail or house of correction for not more than two and one half years, or by both such fine and imprisonment."

U. S. Rev. Sts. § 5209, as amended by 40 U. S. Sts. at Large, 972, c. 177, § 7, referred to in the argument for the defendant and in the opinion, reads as follows:

"Any officer, director, agent, or employee of any Federal reserve bank, or of any member bank as defined in the Act of December twenty-third, nineteen hundred and thirteen, known as the Federal reserve act, who embezzles, abstracts, or wilfully misapplies any of the moneys, funds, or credits of such Federal reserve bank or member bank, or who, without authority from the directors of such Federal reserve bank or member bank, issues or puts in circulation any of the notes of such Federal reserve bank or member bank, or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree, or who makes any false entry in any book, report, or statement of such Federal reserve bank or member bank, with intent in any case to injure or defraud such Federal reserve bank or member bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such Federal reserve bank or member bank, or the Comptroller of the Currency, or any agent or examiner appointed to examine the affairs of such Federal reserve bank or member bank, or the Federal Reserve Board; and every receiver of a national banking association who, with like intent to defraud or injure, embezzles, abstracts, purloins, or wilfully misapplies any of the moneys, funds, or assets of his trust, and every person who, with like intent, aids or abets any officer, director, agent, employee, or receiver in any violation of this section shall be deemed guilty of a misdemeanor, and

upon conviction thereof in any district court of the United States shall be fined not more than $5,000 or shall be imprisoned for not more than five years, or both, in the discretion of the court.

"Any Federal reserve agent, or any agent or employee of such Federal reserve agent, or of the Federal Reserve Board, who embezzles, abstracts, or willfully misapplies any moneys, funds, or securities intrusted to his care, or without complying with or in violation of the provisions of the Federal reserve Act, issues or put in circulation any Federal reserve notes shall be guilty of a misdemeanor and upon conviction in any district court of the United States shall be fined not more than $5,000 or imprisoned for not more than five years, or both, in the discretion of the court."

The case was argued at the bar in September, 1926, before *Rugg*, C.J., *Braley, Crosby, Carroll,* & *Wait,* JJ., and afterwards was submitted on briefs to all the Justices except *Pierce,* J.

*G. S. Taft,* for the defendant.

*C. B. Rugg,* Assistant District Attorney, (*H. W. Brown,* Assistant District Attorney, with him,) for the Commonwealth.

WAIT, J. The defendant was found guilty upon two counts of an indictment under § 53A, added to G. L. c. 266 by St. 1922, c. 313, § 2, which, in those counts, charged that he, being the treasurer of the Fitchburg Savings Bank, did on July 7, 1924, and on January 15, 1925 "wilfully misapply moneys, funds, credits or other property" of the bank "otherwise than as described in General Laws, chapter two hundred sixty-six, sections fifty-two and fifty-three." No motion for specifications was filed. No question of form is raised.

There is no dispute that in July of 1924 and January of 1925, the defendant was treasurer as alleged; nor that the jury could find the following facts:

The defendant, personally, owed to the Merchants National Bank of Worcester $80,000 and desired to pay it when due on July 9, 1924. To raise the money, he arranged with one Whitney and with Flora B. Bullock, hereinafter called

Mrs. Bullock. There was an established custom for the treasurer to make loans secured by collateral without first obtaining the approval of the board of investment, which, at its next regular meeting after the loan, would ratify his action. Acting as treasurer, before July 7, he arranged that the bank should lend Whitney $50,000 on Whitney's note for six months secured by good collateral, and that Whitney should lend the $50,000 to him personally. On July 7, he gave to Whitney the bank's check on the Fitchburg Bank and Trust Company for $50,000. Thereupon he received, for the bank, Whitney's note for $50,000 with the collateral, and, for himself, by indorsement from Whitney, the check for $50,000; all of which he turned into the Fitchburg Savings Bank. He also arranged that Mrs. Bullock should borrow $37,000 from the savings bank on her note with good collateral. She was unable to deliver her note and the collateral before July 9; but on July 7 she gave to the defendant her check for $37,000 on a Boston banking institution, where, as both of them knew, her deposit subject to check was only about $1,700; this check he agreed was to be indorsed by him and turned over to the bank to be held by it until she should furnish her note and collateral on July 9. He indorsed and turned in this check, and thereupon the bank gave to the defendant its check signed by the assistant treasurer for $35,000, payable to the defendant, which he indorsed in blank and turned back to the bank. In addition, the bank made its check, signed by the assistant treasurer, for $15,000, payable to the Fitchburg Bank and Trust Company which was credited by the trust company to the defendant's account with it. The defendant gave his personal check on the trust company for $8,000 to the savings bank.

On July 8 the defendant sent by mail to the Merchants National Bank at Worcester, in payment of the note due July 9, a check for $80,000, payable to its order, which was drawn on the Massachusetts Trust Company at Boston and was signed by the Fitchburg Savings Bank by the defendant as treasurer. The Merchants National Bank received this check on July 8 and notified the defendant by telephone that it would not accept the check of the savings bank signed by

him as treasurer in payment of his personal debt, but would accept the bank's check signed by the assistant treasurer. On July 8 the defendant, after this communication, took a check of the savings bank signed by the assistant treasurer and drawn to the order of the Leominster National Bank on the Massachusetts Trust Company at Boston for $80,000 to the Leominster National Bank at Leominster and there received for it the check of that bank dated July 9 to the order of the Merchants National Bank for $80,000. This check he sent on July 8 to the Merchants National Bank.

Both Whitney and Mrs. Bullock were of good financial responsibility. The notes which they gave to the Fitchburg Savings Bank were paid in due course. On July 9, Mrs. Bullock delivered her note for $37,000 with good collateral to the savings bank, and received her check for $37,000 which was marked "void." The loans were approved by the board of investment at its next regular meeting. The check first sent to Worcester was returned to the defendant by the Merchants National Bank marked "void" a few days after that bank had received the check of the Leominster National Bank; and it was accompanied by the note for $80,000, which was marked "paid."

In the regular course of business, the checks drawn on the Massachusetts Trust Company would not be presented to it and paid before July 9. On July 9, the Fitchburg Savings Bank was in possession of funds furnished by the defendant sufficient to meet them. No loss to the savings bank resulted from the transaction.

In January of 1925 the defendant, as indorser, owed the estate of Henry McGrath a note for $50,000 made by Mrs. Bullock. On January 15 he sent in payment to Miss McGrath, the trustee of the estate, a check for $50,000 drawn by the Fitchburg Savings Bank on the Merchants National Bank of Boston and signed by the defendant as treasurer. In ordinary course of business this check would be presented and paid at Boston on January 16. Before he sent the check, he arranged by telephone, and received the oral promise of Miss McGrath, that she would not deposit it before January 19. Also, before January 15, the defendant,

in accord with the practice already referred to, arranged that the Fitchburg Savings Bank should loan to Cornelius Quinlan, Agnes N. Quinlan and Mrs. Bullock on their demand note, $65,000. The Quinlans, who owed the bank $15,000, had signed the note before January 15, but Mrs. Bullock was unable to execute it before January 20. On January 20, the note for $65,000 was signed by Mrs. Bullock and delivered to the bank which, on the same day, issued its check for $15,000. This check was used in the payment to the bank of the $15,000 indebtedness of the Quinlans. No other checks were issued in this transaction. On January 19, Miss McGrath deposited the check for $50,000. It was paid by the Merchants National Bank of Boston on January 20.

The loan of $65,000 was ratified by the board of investment on January 26. Miss McGrath was financially responsible. The defendant knew that Miss McGrath deposited the estate's funds with the Fitchburg Bank and Trust Company, and that if she did not deposit it until the nineteenth in accord with her promise, the check could not reach Boston and be paid before January 20. He had reason to believe Mrs. Bullock would sign the note for $65,000 on January 20. That note was paid October 26, 1925. No loss resulted to the Fitchburg Savings Bank from the transaction.

The defendant testified that he did not wilfully misapply any of the moneys, funds, credits, or other property of the Fitchburg Savings Bank. The defendant contends that on this evidence there has been no wilful misapplication of the "moneys, funds, credits or other property" of the bank, and that he was entitled to have the judge direct the entry of a verdict of not guilty. He contends that the judge erred in refusing to charge the jury in accord with his requests as follows:

"As to the $37,000 transaction —

"Even if the defendant drew a savings bank check for $80,000 upon a Boston bank and negotiated it before Mrs. Bullock's note and the collateral securing it had been put into the savings bank, still there would be no wilful misapplication of the moneys, funds, credits or other property

of such savings bank within the meaning of G. L. c. 266, § 53A, provided the note and collateral of Mrs. Bullock did in fact get into the savings bank before the savings bank check had reached the Boston bank upon which it was drawn.

"And provided further that the defendant when drawing and negotiating the savings bank check had reason to believe that in the ordinary course of business said savings bank check could not reach the Boston bank upon which it was drawn, and be charged by that bank to the account of the savings bank until after Mrs. Bullock's note and collateral would get into the savings bank.

"If the defendant had arranged with Mrs. Bullock prior to drawing and negotiating the savings bank check for $80,000 on July 8 to have her put her note secured by collateral into the savings bank July 9, and if he had reason to believe that that would be done, and if in fact it was done, and if he knew on July 8 when he drew the savings bank check and negotiated it that said check would not in the ordinary course of business reach the Boston bank upon which it was drawn and be charged by that bank to the account of the savings bank before July 10, when in fact it did reach the Boston bank and was charged to the account of the savings bank, then there would be no wilful misapplication of the moneys, funds, credits or other property of the savings bank within the meaning of G. L. c. 266, § 53A."

"As to the $50,000 transaction —

"If the defendant, before mailing the check for $50,000 on January 15, 1925, to Miss McGrath, had arranged with the makers of the $65,000 note to have the note in the savings bank on January 20, and if he requested Miss McGrath, the payee of the check, to hold the check and not to deposit it until January 19, and if she had promised so to do, and in fact she did not deposit said check until January 19, and if in fact said check was not charged to the account of the savings bank until January 20, and if in fact when it was so charged on January 20 said note was in fact in the savings bank, and if the defendant had reason to believe that in the ordinary course of business said check, if not deposited by Miss McGrath before January 19 as promised by her, would

not reach the bank upon which it was drawn and be charged to the account of the savings bank until January 20, then there was no wilful misapplication by the defendant of the moneys, funds, credits or other property of the savings bank."

He contends further that the judge erred in the instructions given to the jury. The jury was instructed: "Now, just what does misapply mean? The full charge is that he did wilfully misapply. Misapply means to use the funds of the bank in a manner or for a purpose not authorized by law, to divert the funds from a rightful or legitimate purpose to a wrongful or illegitimate purpose, to use the funds improperly, and that must be done to come within the prohibition of the statute, wilfully. Where a treasurer or an officer of a savings bank inadvertently or by mistake misuses, misapplies the funds of a bank, as for instance making perhaps an improper investment, an investment not authorized by statute, but does it by mistake or misapprehension, the statute would not apply. What he does to come within the prohibition of the statute, he must wilfully do.

"Wilful implies an action by the will or mind; it means to do the act by design, intentionally, or with a set purpose, and it doesn't necessarily, as used in this statute, imply that there was a wrongful intention, or malicious or criminal design. To wilfully misapply means just this — that the person charged with committing that offence or wilfully misapplying must intentionally, or with a purpose, or a design use improperly the moneys, funds or credits of the bank and use them in a way not authorized by law. . . .

"Now, if you find that the defendant, Nichols, as treasurer of the bank, accepted Mrs. Bullock's check of $37,000, knowing that there were not sufficient funds in the bank on which it was drawn to pay it if presented, and advanced or caused to be advanced funds or credits of the savings bank for his own use, relying upon that check, you will be justified in finding the defendant guilty of misapplication as charged.

"A check, gentlemen, is a demand instrument, and if there are not sufficient funds in the bank on which it is drawn to the credit of the drawer, it is not a good check. A check

purports to be immediately convertible into cash.  If it is not, the fact that the maker may be otherwise responsible for the amount of the check, does not stabilize or validate it as such.  That is — I may have funds in the State Street Trust Company in Boston, I may have securities, but if I draw a check on one of your Worcester banks, having no funds in any of your Worcester banks, and put that check out, then the fact that I may have other funds in the State Street Trust Company in Boston which are more than sufficient to cover this check, does not validate or make good my check on the Merchants Bank in Worcester.

"The situation in reference to the fourth count, the McGrath transaction, is somewhat similar.  In that case, as I remember the evidence, there was due the estate of Mr. McGrath $50,000, as I remember it.  Along about the fifteenth or sixteenth of the month when as I remember the evidence the note was due, Nichols drew a check of the savings bank and sent it to Miss McGrath.  According to his testimony, he called up Miss McGrath and asked her not to deposit the check until the following Monday, which I think was the nineteenth.  There is no dispute I think but what between the date, the due date, the fifteenth or sixteenth, up to Monday, the nineteenth, that he had no funds in the savings bank with which to meet that check if it should be presented.  The charge is that for those four or five days he had issued a check, which was a valid and binding obligation upon the savings bank, and which the savings bank would have had to meet if it had been presented on the afternoon of the fifteenth or sixteenth, whatever day it was drawn, or on any business day between that day and the day it was presented; that, it is claimed by the Commonwealth, was a misuse, a wilful misapplication of the funds or credits of the Fitchburg Savings Bank, and if you find those facts to be as claimed by the Commonwealth, that it was a wilful act, bearing in mind the definition I gave you a few moments ago of misapplication, then you will be warranted in bringing in a verdict of guilty on the fourth count.

"Perhaps I should say on the second count, the Bullock count, one further thing.  If you find that Nichols, in

behalf of the Fitchburg Savings Bank of which he was treasurer, accepted Mrs. Bullock's check as a cash item, knowing it was not good for prompt presentment, that would constitute a misapplication of the bank's funds or credits.

"If you find the defendant on the part of the bank accepted Mrs. Bullock's check as a cash item, knowing it was not good for prompt presentment, then you would be justified and warranted in finding that would constitute misapplication of the bank's funds and credits."

The words "wilfully misapplies" as used in G. L. c. 266, § 53A, have not been construed in any decision of this court. They occur in U. S. Rev. Sts. § 5209, (Comp. Sts. 1916, § 9772,) which is in many respects similar to § 53A. The defendant contends that they should be given the meaning in our statute which the courts of the United States have attributed to them in passing upon § 5209. This the trial judge did not do.

Section 5209 was first enacted in 1864, and there are many decisions in the Supreme Court of the United States and in the Federal courts of the various circuits and districts which have passed upon its meaning before the enactment of § 53A. As stated in *Commissioner of Banks* v. *Prudential Trust Co.* 242 Mass. 78, 84: "It is an established rule that the adjudged interpretation of the words of a statute by the courts of the jurisdiction where it was enacted is intended to be adopted when afterwards the same statute is passed by the Legislature of another State or country. Courts of the latter State or country commonly feel constrained to give to the statute the same construction as that earlier given it by the courts of the State or country first enacting it, in the absence of compelling reasons to the contrary."

It was said in *United States* v. *Britton*, 107 U. S. 655, 669: "The words 'wilfully misapplied' are, so far as we know, new in statutes creating offences, and they are not used in describing any offence at common law. They have no settled technical meaning . . . ." The case held that to make out the offence it must appear that the act charged was done with intent to injure the association concerned and must be (page 666) "a misapplication for the use, benefit or

gain of the party charged, or of some company or person other than the association. Therefore, to constitute the offence of wilful misapplication, there must be a conversion to his own use or the use of some one else of the moneys and funds of the association by the party charged." This decision has been followed in the Supreme Court of the United States: *United States* v. *Northway*, 120 U. S. 327, *Evans* v. *United States*, 153 U. S. 584, *Coffin* v. *United States*, 156 U. S. 432, *United States* v. *Heinze*, 218 U. S. 532; but a careful reading of the opinions leaves one in doubt whether it can yet be said that the words "wilfully misapplied" have a "settled technical meaning."

Section 53A differs from the Federal statute in omitting the requirement that the act must be done "with intent in any case to injure or defraud" the bank or some other person, which in *Evans* v. *United States, supra,* was declared the gravamen of the offence. It also adds the words "or other property" to the words "moneys, funds or credits" of the bank in describing what may be misapplied.

We think the trial judge was not bound by the construction given to the words by the courts of the United States. The instruction given by him accords better with the intent of the Legislature, disclosed by the way in which it varied its enactment from the form of the Federal statute, to guard against a wider range of improper actions by officials and employees of banks than was denounced by the earlier statute.

We find no error of law in the instruction with regard to the interpretation to be given "wilfully misapply."

Nor do we find error in the instruction given with regard to Mrs. Bullock's check for $37,000. It is manifest that a withdrawal of its property without authority from the bank by the negotiation of its check, based upon the receipt of a check known not to be good for its face, is a misapplication of its property. It is like an unauthorized overdraft. *Evans* v. *United States, supra.* A check is a demand instrument, *Bullard* v. *Randall*, 1 Gray, 605, and is not good as an assignment. *Tremont Trust Co.* v. *Burack*, 235 Mass.

398. The maker can stop payment upon it at any time before it is presented and paid.

The defendant contends that until the checks negotiated by him on July 8 and on January 15 were presented and paid, no moneys, funds, credits or other property of the bank were applied improperly; and, since on July 10 and on January 20, when the checks were presented and paid, there was property supplied by him in the bank sufficient to meet them, that there was no misapplication at any time. We are unable to assent. The checks were binding upon the bank, if they reached the hands of a *bona fide* holder for value, immediately upon delivery. They represented a property of the bank, its power to command credit in the world of commerce. Before delivery the checks were the property of the bank. That property the defendant took and applied for his own purposes without right. No evidence shows that he had a right by virtue of his office or by special authorization from the bank so to deal with the bank's credit or its checks.

It is immaterial that no loss resulted. *Evans* v. *United States, supra.* His offence was complete when he made and delivered the checks. From the moment he delivered them until the bank received the notes and collateral of Mrs. Bullock — from July 7 till July 9 in one case, and from January 15 till January 20 in the other — he was applying the bank's credit for his own purposes. Its only safeguard from loss was reliance upon the good faith of Mrs. Bullock and Miss McGrath. Such conduct of an officer or employee of a banking institution is, in our opinion, one of the things the statute was intended to prevent, and to characterize as misapplication of money, funds, credits or other property of the bank.

It is likewise immaterial that there may have been no intent to defraud the bank or any one else. Section 53A omits the requirement of intent to defraud which has been stated to be the gravamen of the offence denounced as wilful misapplication by the Federal statute.

In the exchange of checks with the Leominster bank, there was a clear misapplication of the bank's property. The

check received from the Leominster National Bank was the property of the Fitchburg Savings Bank. This property the defendant took and used before the savings bank had received the note and collateral from Mrs. Bullock which furnished the funds to meet $37,000 of its amount. Upon the second count, at least, the case must have been submitted to the jury.

It follows from what has been said that the judge was right in the instruction excepted to; that he was right in refusing to give the instructions requested, and in denying the motion to direct a verdict of not guilty.

We have examined with care the many cases cited by the defendant, but find in them no sufficient ground for sustaining his contentions.

*Exceptions overruled.*