THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* PHILIP BERARDINI and Others, Defendants.

Court of General Sessions, New York County, January 30, 1934.

*Thomas C. T. Crain, District Attorney* [*John C. McDermott* of counsel], for the people.

*Schreiber, Buchter & Rathheim,* for John J. Pulleyn and John W. Pulleyn.

*Menken, Ferguson & Hills,* for Charles I. Cocklin.

*William J. H. Molinari* and *Vincent Gilroy,* for Clement Grassi and Victor E. Tozzi.

*Raymond Wise,* for Philip Berardini and Michael Berardini.

KOENIG, J.    Two indictments were filed by the grand jury against each of the above-named defendants charging them with a violation of section 305 of the Penal Law, which reads as follows: " Any officer, director, trustee, employee or agent of any corporation to which the banking law is applicable, who abstracts or wilfully misapplies any of the money, funds or property of such corporation or wilfully misapplies its credit, is guilty of a felony."

Indictment No. 195,570, in brief, alleges that these defendants, being directors of a moneyed corporation, M. Berardini State Bank, did willfully misapply the sum of $58,481.18, on the 19th day of December, 1928, by the purchase of 1,000 shares of stock of a corporation called the "Golden State Milk Products Company."

The second indictment, No. 195,571, alleges that the above-named defendants, on the 28th day of October, 1931, made a loan in the sum of $15,495 to the Banca M. Berardini, Naples, Italy, which was in violation of the Banking Law of the State of New York, in that the total indebtedness, $247,571.59, was theretofore in excess of one-tenth part of the capital and surplus of the said M. Berardini State Bank.

The defendants move to dismiss these indictments upon the grounds: (1) That the evidence before the grand jury failed to establish a violation of section 305 of the Penal Law; (2) that the testimony before the grand jury failed to connect these defendants or any of them with the commission of a crime, even though a crime had been established; (3) that incompetent evidence in the form of opinion evidence of the witness Egbert was given to the grand jury; and counsel for two of the defendants also urges that section 305 of the Penal Law is unconstitutional.

After the argument of this motion, I stated to counsel that in view of the possible unsatisfactory record as disclosed on that argument — in which the assistant district attorney who appeared for the People agreed — I would examine all available documentary evidence in the possession of the district attorney, although not presented to the grand jury, to determine, as a matter of justice both to the State and to these defendants, whether a crime was committed and whether the defendants were connected therewith. This was to obviate a useless gesture on my part in deciding this motion (Cf. *People* v. *Flack*, 216 N. Y. 123, 126–132; *People* v. *Travis*, 257 id. 474.) To this the respective counsel for the defendants agreed. In determining this motion, not only has the competent evidence before the grand jury been considered, but all documentary evidence available. This available evidence, having probative value, has in the main been referred to in the People's brief.

The defendants urge as to the purchase of the stock alleged in one of the indictments that, though it may constitute a violation of the Banking Law, as set forth in section 106, nevertheless, it is not a misapplication of the funds of the corporation but constitutes a mere maladministration. (*United States* v. *Britton*, 107 U. S. 655.) With that view I am not in accord. The Banking Law of this State limits the powers of banks and surrounds them with restrictions. It sets forth what bonds or stocks may be purchased by a

bank in its behalf. (Banking Law, § 106, subds. 3, 4, 5.) Under these sections the purchase of the stock set forth in the indictment is not within the purview of the bank's authority. To hold that a purchase of stock not authorized by law, even though it be honestly conceived to be for the benefit of the bank, is not a misapplication of the funds of the bank, is untenable. The word " wilfully," as used in section 305, has been construed in *People* v. *Marcus* (261 N. Y. 268). The test is not whether the act proceeds from honest motives. The law never intended a bank to buy stock not authorized by statute.

Although such purchase might be founded on sound business judgment and may result in an advantage to the bank, it is conceivable, nevertheless, that it might result in a loss to the bank, the impairment of its credit and injury to its stockholders and depositors. If the construction of the provisions of the Banking Law were otherwise, a bank could with impunity buy all sorts of stock in its honest belief that it would be of advantage to the bank. The judgment of its officers, directors or trustees having been erroneous, no criminal responsibility would then lie under section 305, though the funds may have been dissipated in an orgy of speculation.

As I construe the law, the Legislature in so many words has said to an officer, director and trustee of a bank if you do what we authorize, you need not worry; go beyond that and you may make yourself amenable to the penal or civil law.

The word " misapply," as used in the statute, should not receive a narrow construction. In the case of *People* v. *Marcus* (*supra*) Judge CRANE, in the prevailing opinion, quotes with approval the case of *Commonwealth* v. *Nichols* (257 Mass. 289) as follows: " Misapply means to use the funds of the bank in a manner or for a purpose not authorized by law, to divert the funds from a rightful or legitimate purpose to a wrongful or illegitimate purpose, to use the funds improperly."

I am, therefore, of the opinion that the purchase of the 1,000 shares of stock of the " Golden State Milk Products Company " on the 19th day of December, 1928, constituted a crime as set forth in the indictment. This conclusion is not arrived at without having in mind the case of *United States* v. *Britton* (*supra*). That case is distinguishable in view of the statute therein discussed which differs from the one now under consideration. (*People* v. *Marcus, supra; Commonwealth* v. *Nichols, supra.*) The Banking Law should be so construed as to be flexible enough to meet the requirements of the banks and rigid enough to protect depositors and the public.

The second indictment is based upon a violation of subdivision

1 of section 108 of the Banking Law. So much as is germane to the question herein reads as follows: " A bank subject to the provisions of this article shall not directly or *indirectly* lend to any individual, partnership, unincorporated association, corporation, or body politic, an amount which * * * will exceed one-tenth part of the capital stock and surplus of such bank, with the following exceptions."

It is not urged by these defendants that the use of this money alleged in the second indictment, if in fact a loan, comes within the exceptions.

The evidence permits the inference that on October 27, 1931, there was an unsecured indebtedness from the Banca M. Berardini, Naples, to M. Berardini State Bank, as appears from the statements and ledger sheet of the New York bank, in the sum of $247,517.94, due on open account. The capital stock and surplus, together with an undivided dividend ($11,514.59) of the Berardini State Bank, on the 28th day of October, 1931, totaled $861,514.59. It is, therefore, clear that if in fact the M. Berardini State Bank on October 28, 1931, made an unsecured loan of 300,000 lire — in United States money, $15,495 — to the Naples bank, it would be a misapplication of the funds of the bank under section 305 of the Penal Law, because the theretofore alleged indebtedness from the Naples bank of $247,517.94 was then in excess of the one-tenth part of the capital and surplus of the M. Berardini State Bank which totaled $864,514.59. (Banking Law, § 108, subd. 1.)

It is claimed by the defendants that the reasonable interpretation from the facts is that the sum set forth in this indictment was a deposit (*Boughton* v. *Flint*, 74 N. Y. 476; *Payne* v. *Gardiner*, 29 id. 146), and that, under the general principles governing deposits, it was not a loan within the meaning of subdivision 1 of section 108 of the Banking Law. If that interpretation be rejected, it is contended that the only other reasonable interpretation that can be drawn is that the money was funds sent to cover money orders drawn on the Naples bank but sold to customers by M. Berardini State Bank in the ordinary course of business.

The People urge, as I gather from the position taken by the assistant district attorney presenting the case and from the brief submitted by the People, that the $15,495 was not sent to the Naples bank to be distributed in behalf of M. Berardini State Bank, but was, in fact, an indebtedness owing to the New York bank from the Naples bank. In support of this contention they submit a letter from the M. Berardini State Bank to the Banca M. Berardini, Naples, Italy, which reads as follows: " The present is to inform you that through the Chemical Bank and Trust Company we have to-day remitted to you the sum of 300,000 lire, valued October 28,

1931, for which you will kindly give us credit in current account. We await as usual your cable advice of receipt, and in the meantime with kindest regards." And also a letter from the Banca Commerciale Italiana to the Chemical Bank and Trust Company, through whose agency the money was transmitted to Italy, which reads:

" NAPLES, *October* 29, 1931

" CHEMICAL BANK AND TRUST CO., NEW YORK:

" As per your cable October 27, we have credited your current account for Lire 300,000 (Three hundred thousand) on order of for account of M. Berardini State Bank, New York in favor of

" To be sent to Banca M. Berardini Piazza Nicola Amore.

" Very truly yours,

" BANCA COMMERCIALE ITALIANA,

" NAPLES OFFICE,

" Signed      RAYMOND TRAINA."

I do not deem it necessary to go into a discussion of whether, if in fact it was a deposit, subdivision 1 of section 108 is applicable, in the light of section 112 of the Banking Law and the definition of the term " excess " as defined by the Banking Law itself. The ultimate question which must be decided is whether the transmission of the sum of $15,495 to the Naples bank was a loan or otherwise. If it is not a loan, the People's case must fail, even though the alleged prior indebtedness was in fact in excess of the statutory provisions of subdivision 1 of section 108 of the Banking Law. That is not the gist of the indictment before me. If it was a loan and in excess of the statutory limitations it would constitute a misapplication of the funds of the bank, in view of the theretofore indebtedness of $247,517.94, if so found by a jury to be the fact. The forms or means adopted to give color to the transaction are not alone controlling. One may look beneath the outward appearances and seek to ascertain the true purpose of the transmission of this money. The criminal law as well as the civil law " looks to the substance and not to the form " of a transaction. (*People ex rel. Briggs* v. *Hanley*, 226 N. Y. 453.)

I hold that a question of fact exists for a jury. In reaching this conclusion, I have given thought to all the facts and circumstances developed by the proceedings before the grand jury and also to the documentary evidence available for use on the trial. Among the factors which a jury would be entitled to consider was the fact that three of these defendants, John J. Pulleyn, Michael Berardini and Philip Berardini, were executors of the estate of M. Berardini, Sr., deceased, which estate controlled the Banca M. Berardini, Naples, Italy. These three defendants were also members of the board of

directors and members of the executive committee of the M. Berardini State Bank, which committee recommended the investments of the institution and practically controlled its affairs. As such executors they also had practical control of the Banca M. Berardini, Naples, Italy. In view of this, and other facts that may well be developed in the trial of the case, a jury might be justified in inferring that the money transmitted to the Naples bank was a loan or advancement for the purpose of aiding that bank and not a transmission for the purpose of the New York bank. If that inference be drawn, of course its weight is for the jury.

Keeping in mind that the law has the right to look to the substance rather than to the form of a transaction, attention is directed to the fact that the Banking Law prescribes under what circumstances a reserve depositary may be utilized by a bank for its deposits.

Section 111 provides: " No bank shall deposit any of its funds with any other moneyed corporation unless the latter has been designated as a depositary for the bank's funds by a vote of a majority of the directors of the bank exclusive of any director who is an officer, director or trustee of the depositary so designated." And section 38 of the Banking Law, in part, provides: " The superintendent shall, in his discretion, upon the nomination of any bank, trust company or private banker, designate a depositary or depositaries for the reserves on deposit of such corporation or banker provided for by this chapter."

The absence of evidence designating the M. Banca Berardini, Naples, as a reserve depository, taken in connection with all the facts and circumstances in the case, that may properly be developed upon the trial, would permit the inference that the sum of $15,495, mentioned in the indictment as transmitted on October 28, 1931, was an advancement or loan.

The claim of two of these defendants challenging the constitutionality of section 305 of the Penal Law, under the provisions of which these defendants have been indicted, is not in accord with my conclusion. It is sufficient to say that judgment of conviction under this statute (*People* v. *Marcus, supra*) was affirmed by the Court of Appeals. It may be that the validity of the statute was not raised by the appellants in that case, but I cannot reject the conclusion to which I come that the Court of Appeals would not have permitted that judgment to stand if it had any doubt as to its constitutionality. I am also not unmindful of the fact that the highest court of appellate jurisdiction in this State has frequently of its own volition interposed questions of law which have resulted in reversals of judgments, although those questions were neither raised on the trial nor in the briefs before that court. (*People* v. *Roper*, 259 N. Y. 170.)

The statute is not on its face so clearly unconstitutional that a court of first instance should-declare it contrary to the fundamental law. It is elementary that a lower court — as distinguished from a court having appellate jurisdiction — should not declare a statute in contravention of the fundamental law of the State unless it is clearly unconstitutional. For the purposes of this motion, I deem the statute constitutional.

With respect to the claim that incompetent opinion evidence has been admitted in the testimony of Mr. Egbert, the Deputy Superintendent of Banks, I may state that I have not considered his views or opinions in the determination of this motion. There being in my judgment sufficient legal evidence to sustain the indictment, it should not be overthrown because of illegal evidence admitted therein. (*People* v. *Doyle*, 107 Misc. 268; *People* v. *Osborne*, 158 N. Y. Supp. 572, 573.)

I hold that the substantive crime alleged in each indictment is sustained by the evidence and presents a question for a jury. It must now be determined whether all or any of the defendants are connected with the crimes alleged.

As to the indictment alleging the misapplication of funds of the bank through the purchase of stock not authorized by law, it is my judgment that the evidence unquestionably connects the defendants Philip Berardini and Michael Berardini with the crime, and that circumstantial factors connect the defendants John J. Pulleyn and John W. Pulleyn. This evidence is strengthened not only against Philip Berardini and Michael Berardini, but also as to John W. Pulleyn and John J. Pulleyn, by the following report of the executive committee of the M. Berardini State Bank, signed by these four defendants:

" Investments purchased since the last weekly meeting of the executive committee of the M. Berardini State Bank, between December 13th, 1928, and December 20th, 1928.

| Date | Description | Par | Cost | Average |
|------|-------------|-----|------|---------|
| Dec. 19 | Golden State Milk Products Co. | 1000 shs. | $58,200. | 58.42½ |

" JOHN J. PULLEYN
" MICHAEL BERARDINI,
" PHILIP BERARDINI,
" JOHN W. PULLEYN.

" Dated, New York, *December* 20, 1928."

I find that the evidence is insufficient to connect the defendants Victor E. Tozzi, Clement Grassi and Charles I. Cocklin with the crime set forth in the indictment charging a misapplication of funds by the purchase of stock not authorized by law.

The presence of these three defendants at the meeting of the board of directors on the 20th day of December, 1928, at which time the secretary of the board read a list of the stocks purchased, among which was the subject-matter of this indictment, even though there was an absence of dissent, does not in my judgment permit the presentation of their cases to a jury as active participants in the crime. It may be stated that the purchase of stock had been completed, as I construe it, through the executive committee of the bank on the 19th day of December, 1928. Mere approval of an act committed, without abetting, aiding or assisting in the doing of the act or without advising or procuring the doing of the act is insufficient to include one as a principal. (*People* v. *Swersky*, 216 N. Y. 471.) Knowledge acquired after the doing of an act with approval and assent thereto is not synonymous with knowledge of the act being done and advising or procuring its commission. (*People* v. *Lowe*, 209 App. Div. 498, 500.) In so ruling, I do so with due consideration of section 667 of the Penal Law, which reads, in part, as follows: " A director * * * present at a meeting of the directors at which any act * * * in violation of this article * * * occurs, * * * must be deemed to have concurred therein, unless he at the time causes or in writing requires his dissent therefrom to be entered on the minutes of the directors."

As I interpret that section it creates an evidentiary rule of presumptive knowledge and concurrence in an unlawful act done in their presence unless they dissent therefrom. This section is in derogation of the common-law principles defining the status of a principal and must be strictly construed. (*People* v. *Schaller*, 224 App. Div. 3.) I, therefore, conclude that this relates only to an act done at a meeting where the opportunity was given to defeat the act by protest. The failure to dissent under these circumstances might well imply presumptive knowledge and acquiescence. It does not relate to an act committed without the procurement and knowledge of the directors prior to their meeting. Mere approval or ratification, expressed or implied, of an act theretofore done is insufficient to make one a principal. (*People* v. *Lowe, supra.*)

As to the indictment charging a misapplication of the funds of the bank through the unlawful loan of the $15,495, it is my judgment that the evidence is sufficient only as to the defendants Philip Berardini and Michael Berardini, the president and vice-president, respectively, of the New York bank. The evidence is insufficient to connect the other defendants with the commission of the crime.

The People urge that John J. Pulleyn, being an executor under the last will and testament of M. Berardini, whose estate had control of the Naples bank, and also a member of the board of directors

and the executive committee of the New York bank, had knowledge and acquiesced in the loan alleged in the indictment. Their contention is untenable. It may be that the facts permit an inference as to knowledge on the part of this defendant as to prior indebtedness of the bank, which constitute an excess loan, but we are here concerned with the specific loan set forth in this indictment.

As evidencing the contrary, it is disclosed that this defendant, at a meeting of the board of directors on July 20, 1931 — subsequent to the admonition of the Superintendent of Banks to decrease the outstanding indebtedness from the Banca M. Berardini, Naples, to M. Berardini State Bank — protested against the sending of additional funds to the Naples bank. In the absence of facts and circumstances evidencing acquiescence with knowledge of its purpose in the subject-matter of this indictment, I find nothing to connect John J. Pulleyn with the crime.

There has been nothing submitted by way of testimony or evidence that justifies an inference connecting John J. Pulleyn, John W. Pulleyn, Clement Grassi, Victor E. Tozzi or Charles I. Cocklin with the crime charged in the indictment, constituting a violation of section 305 of the Penal Law by unlawfully misapplying the sum of $15,495 by the making of an unauthorized loan in violation of subdivision 1 of section 108 of the Banking Law.

The motion to dismiss the indictment numbered 195,570 is denied as to the defendants Philip Berardini, Michael Berardini, John J. Pulleyn and John W. Pulleyn, and is granted as to the defendants Clement Grassi, Victor E. Tozzi and Charles I. Cocklin, with leave to resubmit to the same or another grand jury.

The motion to dismiss indictment numbered 195,571 is denied as to Philip Berardini and Michael Berardini, and is granted as to John J. Pulleyn, John W. Pulleyn, Victor R. Tozzi, Charles I. Cocklin and Clement Grassi, with leave to resubmit to the same or another grand jury.