## STATE v McNARY

Ohio Appeals, 6th Dist, Lucas Co

No 2870. Decided Feb 5, 1934

Frazier Reams, Prosecuting Attorney, Toledo, Joel S. Rhinefort, Toledo, and Arnold F. Bunge, Toledo, for plaintiff in error.

Fraser, Hiett, Wall & Effler, Toledo, for defendant in error.

## OPINION

By WILLIAMS, J.

We shall concern ourselves in the first instance with a consideration of the third and fourth counts.

The court below held the indictment insufficient upon the ground that §§710-130 and 710-134, GC, contain no provision relating to penalty and that declaring a dividend in violation of those sections could not, in law, be a misapplication of funds of the bank within the meaning of §710-172, GC, which carries a penalty.

Sec 710-172 GC reads as follows:

"Whoever, being an officer * * * of a bank wilfully misapplies any * * * funds. * * * of such bank, whether owned by it or held in trust * * * with intent to· defraud or injure the bank or any person cr corporation * * * shall be fined not more than $10,000.00 or imprisoned in the penitentiary not more than thirty years, or both."

Sec 710-130 GC reads, in part, as follows:

"The board of directors of any bank may declare a dividend of so much of its undivided profits as they deem expedient."

Sec 710-134 GC in part, reads as follows:

"The surplus of any bank shall not be used for the payment of dividends nor shall the same be used for the payment of expenses or losses until the credit to undivided profits on the books of the bank has been exhausted."

There is no claim that dividends can legally be paid except out of undivided profits.

In Riegle v State, 45 Oh Ap, 251, decided March 20, 1933, (14 Abs 460, 669), this court had under consideration the question whether a wilful misapplication under §710-172, GC, could be based upon a violation of §710-121, GC, which latter section does not contain any penalty, and makes illegal an investment of more than twenty per cent 'of the capital stock and surplus of the bank in any one stock or security. In the opinion in that case, the following language was used:

"A demurrer was filed to the indictment; the defendant contending that a violation of §710-121 GC was not a wilful misapplication under the terms of the penal section, §710-172, GC.

We have given the language of the indictment a careful examination, and conclude that the demurrer was properly overruled. The mere investment of more than 20 per cent of the capital and surplus of the bank in any one stock or security would not, of course, constitute a penal offense, but the indictment charges far more than that. Such offense has, in fact, a double aspect, namely, the wilful and unlawful purchase by himself, as president of the $1.000 bond from himself for the bank, with the intent to defraud the bank, and further he is subject to the charge that, as president of the bank, knowing that 20 per cent was unlawfully invested in the bonds of the Hughes Dairy Company, he unlawfully and wilfully and with intent to defraud, invested funds of the bank in the bonds of said company. The conduct which is condemned as criminal in §710-172, GC, is not less criminal because it involves an investment of more than 20 per cent of the bank's capital and surplus, as prohibited by §710-121, GC."

We are therefore confronted with the alternative of changing our position or adhering to that formerly announced. After careful consideration and examination of the matter, we adhere to our former position. The Banking Act of Ohio provides how the funds of a bank shall be applied

and forbids application of funds in various ways and makes such application illegal.

If the language of the statute is given its ordinary meaning, any application made illegally under the Ohio banking act would be a wrongful application and consequently a misapplication and, as we construe the various sections, a wilful misapplication of bank funds by an officer of the bank, such as president, by applying them to purposes forbidden by the banking act, with intent to defraud, would constitute a crime under §710-172, GC.

In the case of Kingsbury v State, 232 Pac.. 887, the court say:

"What is meant in ordinary parlance by the word 'misapply'? We do not feel that the Legislature intended to give any different meaning to it from that commonly accepted, to-wit, to apply wrongly, to use for wrong purposes. Webster's International Dictionary. Certainly a purpose positively prohibited by law must be a wrong one. In the case at bar, the indictment alleges that the capital stock and surplus of the Farmers' & Merchants' Bank was $50,000.00 and that on the 31st day of March the Arizona Cattle Company, a corporation, was indebted to the bank in a sum in excess of 25 per cent of the said capital stock and surplus, and the bank therefore was not, as a matter of law, permitted to loan any further sums to said cattle company. This clearly alleges facts which show that any further loan was illegal, whether a penalty was annexed thereto or not, and we hold that a loan prohibited by law must ipso facto be a misapplication of the funds of the bank.

It is true that such illegal loan, though constituting a wilful misapplication, would not of itself be a personal crime on the part of an officer of the bank, but when we add to the wilful misapplication that the same was done with intent to defraud, we feel that a crime under the statute has been set forth. It may or may not be true that in some cases in order to show that money is used for a wrong purpose, it would be necessary to set up facts showing an actual conversion, or loss, but we certainly do not believe that when the particular use of the money or credit is specifically prohibited by law, that anything further is necessary to either allege or prove the wilful misapplication, than to show the illegal use. Since the indictment in this case sets forth facts alleging the defendant, with intent to defraud, did aid in applying funds and credit of the bank to an illegal purpose, we think it is sufficient."

It is contended by defendant in error, however, that the statutes involved were taken from the Federal Banking Act and that at the time the statutes were adopted in this state the Federal Banking Act had been construed in such a manner that the indictment in the present case would not state any offense under such construction, and that the Legislature of Ohio intended to adopt the Federal statute as it had then been construed by the Federal courts.

The rule is thus stated in Gale v Priddy, 66 Oh St, 400, at page 406:

"When a statute is adopted from another state where it has received a settled construction, the presumption is that such construction was adopted and that the terms of the statute are used in the same sense."

This case has been cited by the Supreme Court many times in recent years as establishing this principle. The general rule, however, is not without its limitations. Many authorities are collected in 25 R.C.L., 1073, §245, and with regard to the exceptions to and limitations of the rule, we quote the following from that section:

"The general rule just stated as to the construction of adopted statutes is by no means absolute, or imperative on the courts of the adopting state, but is subject to numerous exceptions. The rule that the adoption of a foreign statute carries with it the prior construction in the originating state has been held to be applicable only where the terms of the statute are of doubtful import, so as to require construction. So the rule has been declared to be inapplicable where radical or material changes are made in the statute, * * * where the foreign construction is not in harmony with the construction of the adopting state, or is contrary to the spirit and policy of the jurisprudence of the adopting state; or where the courts of the adopting state are clearly of the opinion that the foreign construction is erroneous, or that its application would lead to a denial of a substantial right."

The defendant in error relies upon the construction of the Federal Banking Act in U. S. v Britton, 108 U. S., 199. We think this case should be read in the light of the fact that the then practice of the federal courts and that of our state courts under the present law as to criminal pleading are entirely different. The then practice of the federal courts was to observe and follow a strict construction, while that of our

state courts under the new Criminal Code is to follow a more liberal course.

There are numerous other federal decisions construing the Federal Banking Act:

U. S. v Britton, 107 U. S., 665;

U. S. v Britton, 108 U. S., 193;

U. S. v Northway, 120 U. S., 327;

Evans v U. S., 153 U. S., 554.

An examination of all these cases makes the position of the United States Supreme Court on an indictment such as the one in the case at bar somewhat difficult to understand. A careful examination of the Ohio banking law with the provisions of the Federal enactment show considerable variation on the part of the Legislature from the wording and provisions of the act of Congress.

In the case of Commonwealth v Nichols, 153 NE, 787, the Supreme Judicial Court of Massachusetts, in construing a similar statute, refused to follow the construction of the federal courts and held valid the following instruction:

"Now, just what does misapply mean? The full charge is that he did wilfully misapply. Misapply means to use the funds of a bank in a manner or for a purpose not authorized by law, to divert the funds from a rightful or legitimate purpose to a wrongful or illegitimate purpose, to use the funds improperly, and that must be done to come within the prohibition of the statute, wilfully. Where a treasurer or an officer of a savings bank inadvertently or by mistake misuses, misapplies the funds of a bank, as for instance making perhaps an improper investment, an investment not authorized by statute but does it by mistake or misapprehension, the statute wouldn't apply. What he does to come within the prohibition of the statute, he must wilfully do. * * * To wilfully misapply means just this, that the person charged with committing that offense or wilfully misapplying must intentionally, or with a purpose, or a design use improperly the moneys, funds or credits of the bank and use them in a way not authorized by law."

In the course of the opinion, the reviewing court say:

"We think the trial judge was not bound by the construction given to the words by the courts of the United States. The instruction given by him accords better with the intent of the Legislature, disclosed by the way in which it varied its enactment from the form of the federal statute, to guard against a wider range of improper action by officials and employes of banks than was denounced by the earlier statute.

We find no error of law in the instruction with regard to the interpretation to be given 'wilfully misapply'."

It appears that the Massachusetts statute omits the words "with intent in any case to injure or defraud", which are found in §53a of the Federal banking law (§5209 U. S. Rev. Stat.)

In the case of Kingsbury v State, supra, the court refused to follow the federal interpretation, in construing a state law similar to ours, and in the course of the opinion we find the following:

"We have great respect for the decisions of the federal court but in matters involving the construction of our own statutes, their opinions, while persuasive, are not binding. The essential parts of the statute of Arizona are 'who wilfully misapplies any of the moneys, funds or credits * * * with intent * * * to injure or defraud.' We have held repeatedly that in many classes of statutory offenses it is only necessary to allege the offense in the language of the statute. Of course, in an offense of this nature, in order to apprise the defendant of what he is to meet, it is also necessary to set up the specific acts which it is claimed constitute the violation of the statute, but if that be done we see no reason for requiring anything further unless there be some particular reason therefor."

This case again came before the court on rehearing and is reported in Kingsbury v State, 235 Pac., 141. In the course of the opinion the following language is used:

"Counsel for defendant express great alarm at the decision of this court to the effect that it is not absolutely and conclusively bound by the decisions of another court construing statutes of its jurisdiction, whose substance we have adopted in Arizona, when such decisions are, in our opinion, not in accord with sound logic or fundamental principles of common sense and justice, and confess their utter inability to assure any citizen of the safety of life, liberty and property under such a rule.

"We feel that they are unduly alarmed. The great commonwealths of Wyoming, Texas, Colorado, Michigan, Montana, Utah, Mississippi, Missouri, and many others have long held this doctrine, and we have yet to learn that life, liberty and property are more unsafe therein than elsewhere in our country. * * *

222

"We appreciate what counsel state in regard to the importance of the federal decisions, and the rule of taking any statute with the construction placed on it within the jurisdiction from which it came, but we feel it of even greater importance, that when' our Legislature' has passed a law to meet a prevalent evil, a logical construction of that law and one best calculated to remedy that evil should be adopted. We see no reason to recede from the position previously taken on this point."

In our judgment the federal decisions, even though they go as far as contended by defendant in error, are not binding on this court, and we are of the opinion that the only wholesome construction of our banking law that is open to us requires us to hold that the third and fourth counts of the indictment state an offense and that the court erred in adjudging these counts insufficient.

With regard to the first and second counts, which charge the defendant with abstracting funds of the bank with intent to defraud, and the fifth and sixth counts, which charge the defendant with publishing a false report with intent to defraud in making a report to the directors regarding the financial condition of the bank, with reference to the declaring of a dividend, it seems to us that these counts are of no value, in view of the construction we put on the third and fourth counts, and that the transaction is properly covered in the latter counts.

For the reasons given the judgment will be reversed and the cause remanded for a new trial.

·Reversed and remanded.

RICHARDS and LLOYD, JJ, concur.