CITY OF SYRACUSE, Plaintiff, *v.* ELMER L. MURRAY et al.,
Defendants.*

Supreme Court, Special Trial Term, Onondaga County, August 19, 1942.

* See, also, *Griffin* v. *City of Syracuse*, 179 Misc. 250.

*James C. Tormey, Corporation Counsel (Merwin W. Lay* of counsel), for plaintiff.

*Harold L. Wood* for defendants Elmer L. Murray et al.

MOREHOUSE, J.   The plaintiff, the City of Syracuse, a municipal corporation, the holder of tax sale certificates as evidence of sales of the real property hereinafter described, for nonpayment of taxes assessed and levied by it for the years 1929, 1931, 1932, 1933, 1934, 1935 and 1936, as well as for certain local assessments, has brought this action under article 7-B of the Tax Law (Cons. Laws, ch. 60), and prays for judgment to the effect that it thereby has a good and valid title to the premises paramount to the claims of any of the defendants or persons claiming under them.

The premises, as described in the tax and assessment rolls and the tax sale certificates, were identified as follows: " 4624 S. Salina St. and Seeley Ave.— Seeley Tract — Block A — Part of Lot 13 — 120x160 ft.— Wood House "

A more complete and detailed description set forth in the complaint and established upon the trial is as follows: " All that tract or parcel of land situate in the City of Syracuse (formerly Town of Onondaga), County of Onondaga and State of New York, known and distinguished as being part of Lot No. Thirteen (13), Block A of the Seeley Tract according to a map thereof filed in the Onondaga County Clerk's Office, bounded and described as follows:   Commencing at the intersection of the west line of South Salina St., with the north line of Seeley Ave., thence west on said north line of Seeley Ave., 160 ft.; thence northerly parallel with South Salina St., 120 ft., thence easterly parallel with Seeley Ave., 160 ft. to the west line of South Salina St., thence southerly along the west line of South Salina St., 120 ft. to the place of beginning."

The answering defendants contend that the description under which the premises were assessed and sold is defective, insufficient and inadequate to identify the property as required by article 2, section 21, of the State Tax Law, which requires "* * * descriptions as shall be sufficient to identify each separately assessed parcel * * *." These defendants also attack the validity of the tax sales which were held under the Tax and Assessment Act of the City of Syracuse (L. 1906, ch. 75) as amended by Local Law No. 4 of the Local Laws of Syracuse,

1925 (Local Laws, 1925, p. 271), adopted under the Home Rule Amendment. Section 22 of that law, as amended (Local Laws, 1925, p. 274), under which the questioned sales were held, eliminated a previously existing requirement that the properties be sold at public auction and directed the Treasurer to bid in for the city all parcels offered for sale. This procedure, it is urged, is in contravention of the State Tax Law, unauthorized by the Legislature, and unconstitutional.

With reference to the alleged faulty description, it cannot be seriously urged that the owners or any one interested in this property were in any manner misled. Descriptions for tax purposes are necessarily condensed, but so long as they are sufficient to identify the property or to inform an interested person of some place or manner of obtaining a more complete description upon inquiry, they have been universally held to comply with the statute. Trifling errors and quibbles over fair meanings are not permitted to invalidate proceedings for the assessment and collection of taxes where the exercise of common sense will enable an interested person to ascertain the essential facts and identify his property. (*McCoun* v. *Pierpont,* 232 N. Y. 66; *Blum* v. *Nassau P. & B. Corp.,* 256 N. Y. 232; *City of New York* v. *Appleby,* 219 N. Y. 76.)

The questioned description informs the most casual examiner as to the street number of the premises, that it is a corner lot, its frontage upon Salina street and its depth upon Seeley avenue, with a reference to its lot number and block letter in the Seeley tract, so that it could be readily identified from any examination of a map of such tract. The objections to the description are deemed to be inconsequential.

Defendants' attack upon the procedure followed at the respective tax sales presents the ever-troublesome problem of constitutional, legislative and local powers and prohibitions. They specifically complain that upon none of these occasions was a " public auction " held, as the City Treasurer in each instance bid in the property for the city pursuant to section 22 of the Tax and Assessment Act of the City of Syracuse.

The assessment, collection, and enforcement of taxes in the City of Syracuse were for a long period conducted under the provisions of a special act of the Legislature (L. 1906, ch. 75) which, in respect to delinquent taxes, provided that the real estate " be sold at public auction." (§ 22.) This special act constitutes the only legislative enactment in this regard expressly applying to the City of Syracuse. After the enactment of the City Home Rule Law (Cons. Laws, ch. 76) and pursuant to its provisions,

the City of Syracuse in April, 1925, adopted Local Law No. 4 of the Local Laws of Syracuse, 1925, which by its section 6 amended the then-existing section 22 by eliminating the provision for a sale at public auction and by directing that it be the duty of the Treasurer to bid in for the city all parcels of real estate at a rate sufficient to pay the taxes with accrued charges. In the ensuing years all tax sales of the City of Syracuse have been conducted in the manner prescribed. The motive behind the amendment is not material to its validity, but experience has demonstrated that a beneficial result has been to eliminate speculators in tax sale certificates.

In *County Securities, Inc.,* v. *Seacord* (278 N. Y. 34), in an opinion by Judge HUBBS, it was held that the City Home Rule Law did not confer upon a city the authority to enact local laws which have the effect of changing the method of collection of taxes provided for in the original charter or the general Tax Law. The effect of this, it seems, would have been to compel a holding that the amendment made by Local Law No. 4 eliminating sale at public auction was invalid because in contravention of the method of sale provided for by the Legislature in the Special Act of 1906. However, Judge HUBBS, in his opinion, stated: " If the Legislature had, prior to the enactment of the ' City Home Rule Law ' or since its enactment, expressly granted to the city of New Rochelle authority to collect delinquent taxes by the sale of tax liens instead of by the sale of the property itself, such grant of power would clearly have been constitutional."

Undoubtedly with this in mind, the Legislature in the following year substantially amended the City Home Rule Law and included therein section 36 as follows: " All existing charters, local laws and other laws, so far as not inconsistent with this chapter, shall continue in force until lawfully repealed, amended, modified or superseded. Any local law which could be validly enacted under this chapter as hereby amended, if heretofore adopted by the local legislative body of any city and not heretofore held invalid by a court of competent jurisdiction, shall be valid and shall not hereafter be held invalid because of any lack of power of such local legislative body to enact such local law at the time of its enactment. Such local law shall be deemed effectual from the date when such local law purported to take effect and all acts authorized thereby are legalized and confirmed." (L. 1939, ch. 867.)

The chief question involved herein seems to be the effect of this amendment by the Legislature as a curative act. The

defendant urges its invalidity for lack of power in the Legislature and as a violation of constitutional provisions. In support, they have referred to a line of authority to the effect that it is beyond the power of the Legislature to cure or validate jurisdictional defects. Without doubt, the Legislature possesses the power to retroactively validate procedure which involves only irregularities in the mode or manner of performing some act. As was stated by Judge Hubbs in *Matter of Pardee* v. *Rayfield* (192 App. Div. 5; affd., 230 N. Y. 543):

"  * * * All of the incidents of taxation are within the control of the Legislature. * * * The fact that the statute in question is retroactive does not make it unconstitutional. * * * What it could have done in the first instance, it could do by subsequent enactment. * * * The law of this State seems to be settled, by a long line of cases going back to the earliest days, to the effect that what the Legislature could originally have done it can do by ratification and confirmation subsequently. * * * The Legislature may validate retrospectively any proceeding which it might have authorized in advance. * * * ." (192 App. Div. at pp. 10–12.)

Again, Judge Hubbs, writing for the court in *Dunkum* v. *Maceck Building Corp.* (256 N. Y. 275, at p. 285), said: "Defects in tax titles which are not jurisdictional may be remedied by curative acts passed for the purpose of correcting past defects and irregularities which constitute clouds on tax titles. 'If the irregularity consists in doing some act, or in the mode and manner of doing some act, which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law.' "

There appears to be no constitutional guaranty that property liable to liens for delinquent taxes must be disposed of at public sale to the highest bidder. The direction that such property be purchased by the City Treasurer constituted no more than a change in the manner and method of a sale to which it was subject. There was no change in the procedure under which the city acquired jurisdiction to conduct the sales, which were held only after due and proper notice to all persons interested who were also extended the right to make payment and prevent the sales, or to redeem within a period of two years.

In considering the sales it is not amiss to refer to the actual interest of the respective defendants in the property which may be claimed to have been adversely affected by the manner of sale. The defendant, Lola S. Wood, is the holder of an unrecorded deed dated April 23, 1935, at a time when all save

one of the sales had already taken place. It may be assumed that before parting with any substantial consideration for the conveyance to her, some inquiry as to unpaid taxes was made in her behalf. The defendant, Murray, the holder of a quit claim deed whose grantee held a tax deed from the Treasurer of Onondaga county, has upon the trial disclaimed any interest in the premises. It does not appear from the evidence that the defendants, Ballweg Funeral Service Inc. and Carl J. Ballweg, have any interest in the property and none of the other defendants has appeared or answered. Each of these defendants has been extended the right to redeem the premises by payment of the sums due for taxes, plus such interest, penalties, and expenses allowed by law.

The manner of conducting the sales now questioned has been followed in the City of Syracuse since 1925. Uncounted parcels of valuable real estate have been so purchased and paid for by the city, with the result that the other taxpayers have carried the burden of the delinquent taxes. During this period, the titles to a great number of properties have been founded upon or affected by these tax sales, none of which has heretofore been adjudged to be invalid. It is inconceivable that anyone, particularly these defendants, has been wronged or deprived of any substantial rights thereby.

" It seems clear from the authorities that the courts will not interfere with legislative action merely because of a complaint concerning its purpose, motives or efficiency. Where jurisdiction exists to interfere it will not do so unless there is infringement on the rights of citizens or a legal wrong is being committed." (*Matter of Herlands* v. *Surpless,* 258 App. Div. 275, 280.)

" It is elementary that a lower court — as distinguished from a court having appellate jurisdiction — should not declare a statute in contravention of the fundamental law of the State unless it is clearly unconstitutional." (*People* v. *Berardini,* 150 Misc. Rep. 311, 318.)

The facts and authorities, as hereinbefore reviewed, lead to the conclusion that the plaintiff has a good and valid title to the premises described in the complaint, and that the defendants have no interest therein. Judgment is accordingly directed in favor of the plaintiff according to the prayer of the complaint.